## KONKLE v. HAVEN.

1. LIBEL AND SLANDER—JOINT DEFENDANTS—HUSBAND AND WIFE
   —LIABILITY OF WIFE.
   Where, in an action against husband and wife for a libel con-
   sisting of a letter purporting to be signed by both of them,
   there is no evidence that the wife's name thereon was writ-
   ten, or adopted by her, it is error to render judgment against
   her.

2. SAME—EVIDENCE—SUFFICIENCY.
   A husband and wife, being defendants in a suit for libeling a
   clergyman by a letter purporting to be signed by both of
   them, their relation to each other, the facts that they ceased
   attending the church of which plaintiff was pastor, and that
   the wife made remarks derogatory of the character of plain-
   tiff and his family are no evidence that she signed the letter.

3. SAME—HEARSAY.
   In an action by a clergyman for a libel consisting of a
   letter written to the board of a church of which he was
   about to assume charge, the letter written by the board to
   plaintiff, and others in answer thereto from former parish-
   ioners to the church board, are hearsay as to defendants and
   inadmissible.

4. SAME—CLERGYMAN—EVIDENCE—TRUTH OF CHARGE—MALICE.
   In an action by a clergyman for a libel consisting of a letter
   questioning his fitness for his profession, testimony as to the
   financial condition of his last parish and the growth in mem-
   bership of his congregation has no legitimate tendency to
   disprove the truth of the charge or show malice.

5. SAME—PUBLICATION—ACT OF PLAINTIFF.
   Where a clergyman sues for a libel consisting of a letter derog-
   atory of his character, he cannot recover any damages for a
   publication thereof consisting of his reading it from his pul-
   pit.

6. SAME—MALICE.
   Remarks derogatory of plaintiff's character by defendant's wife
   and their ceasing to attend the church of which plaintiff was
   pastor have no tendency to show malice.

7. SAME—PRIVILEGED COMMUNICATIONS—FALSITY—MALICE.
    A letter derogatory of the character of a clergyman, written by
      a member of his congregation to the elders of a church of
      which he was about to assume charge, was quasi privileged,
      and in order to support recovery therefor plaintiff must show
      both the falsity of the charge and malice.

Error to Van Buren; Carr, J. Submitted April 28,
1905. (Docket No. 123.) Decided June 8, 1905.

Case by Israel Konkle against John M. Haven and
Hattie A. Haven for libel. There was judgment for plain-
tiff, and defendants bring error. Reversed.

This is an action of libel, based upon the following pub-
lication:

"From John M. Haven,
            "Bloomingdale,
      "Van Buren County, Michigan.
                  "BLOOMINGDALE, October 18, 1903.
"To THE ELDERS OF THE CHURCH OF CHRIST,
                  "Hillsburg, Ontario, Canada.
    "*Dear Sisters and Brothers:* We see by our local
paper, the Bloomingdale Leader, that (Rev.) I. Konkle is
to go to your place to act as pastor of your local church.
    "Now, as a people who wish to see the Master's cause
prosper and his work go on we fear you do not know the
character and reputation of this man. We write you this
letter of warning and invite you to investigate if you
choose. We know and can prove them to be facts, not
hearsay, if what we and others see with our eyes and hear
with our ears can be counted as facts. We know he is a
man who uses tobacco and liquor, is not a truthful man,
and his family is no credit to any town or community.
If you wish to know further, write us or A. Haven, Mrs.
E. J. Merrifield, Charles Rippey and many others I can
mention if you wish from here, also J. H. Reese of Bangor,
or D. Monroe, State evangelist of St. Johns, Mich., who
all know him. If you wish to know my reputation write
any of the above or D. R. Perkins, editor of our local pa-
per, Harrison & Spayde, merchants, H. C. Sweet, mer-
chant, G. H. Hudson, post master, G. L. Stewart, station
agent, or any business man or farmer in the country sur-

rounding. We earnestly court investigation and hope you will not be imposed upon as we have been here by this man. We wish you would read II John 11th verse, and I Timothy 6th chapter 3 to 6.

> "Yours in Christ,
>       "JOHN M. HAVEN,
>       "HATTIE A. HAVEN."

Plaintiff, then the pastor of the Church of Christ at Bloomingdale, Mich., had made a contract to accept the pastorate of the church at Hillsburg, Ontario. One of the church board at Hillsburg, whose testimony was taken by deposition, testified that upon the receipt of the letter he sent it to Mrs. Konkle, and sent a request to Mr. Konkle to have the parishioners at Bloomingdale sign a petition stating that he was a proper person to follow the calling of minister of the gospel, and further testified that such paper was received by the church board from the plaintiff. No further action was taken by the church at Hillsburg, and plaintiff entered upon his duties as pastor there in accordance with his contract.

Plaintiff was not sworn as a witness, but introduced evidence tending to show the contents of the letter sent by the church board at Hillsburg to the plaintiff, and the reply of some of the parishioners thereto. With rare good sense, the church board at Hillsburg did not make the letter public there, for the reason that it might injure the plaintiff in his work, should he become their pastor. Plaintiff also gave evidence tending to show that under his pastorate at Bloomingdale the church prospered financially, and that he was active and industrious in church work; that they increased his salary; and that while he was there some 40 members were taken into the church. One witness testified to some derogatory remarks made by the defendant Mrs. Haven about the plaintiff and his family.

The plaintiff, at the time he preached his farewell sermon to the church in Bloomingdale, read the letter now complained of in the pulpit to the congregation.

Defendants introduced no testimony.

The court instructed the jury that the letter was a qualifiedly privileged communication, "and if the plaintiff has failed to establish both the falsity of the thing set forth in the letter, and that the defendants wrote them with malice, ill will, or hatred, then plaintiff cannot recover." The jury rendered a verdict for the plaintiff.

*Frank S. Weston* and *Thomas J. Cavanaugh*, for appellants.

*W. J. Barnard* and *Benjamin F. Heckert*, for appellee.

GRANT, J. (*after stating the facts*). The judgment must be reversed for several errors.

1. There was no proof that defendant Mrs. Haven signed the letter or took any part in its publication. Evidence was introduced identifying the signature of Mr. Haven. The facts that defendant Hattie was the wife of her codefendant, and was therefore on intimate relations with him; that they did not attend church after some difficulty arose in it; that she had made statements derogatory of the character of the plaintiff and his family to a third person—are no evidence that she signed the letter. Without such evidence the judgment against her cannot stand, and the court should have directed a verdict in her favor.

2. Plaintiff was permitted to give evidence of the contents of the letter sent by the church board of Hillsburg to the plaintiff, and the letters received from some of his parishioners living in Bloomingdale in reply thereto. This testimony was hearsay. The defendants were entitled to have the letters produced to speak for themselves, if they were competent testimony. None of these letters appear to have been written by parties to whom the letter referred for information as to the truth of the charges made in it. The letter of defendants did not authorize and make them responsible for letters written by any person connected with the church at Bloomingdale, to whom the elders of

the church at Hillsburg or the plaintiff might apply. It mentioned certain persons, and offered to mention many others if the elders desired. Whether, in a suit for libel, the letters written by the parties named in the letter to the elders would be competent evidence, for the reason that defendants had solicited them, we need not consider. The letters were not from those to whom the defendants referred for information, and were therefore inadmissible. One or more of the letters was introduced in evidence, but was finally excluded, but the testimony as to their contents was not stricken out.

3. Testimony of the financial condition of the church and the number of members admitted under plaintiff's pastorate had no legitimate tendency to disprove the truth of the charges or to show malice. One of plaintiff's witnesses testified that the pastor preceding the plaintiff brought in more members than did the plaintiff; that he held a large revival, but was then (at the time of the trial) in the Joliet State prison.

4. There was no occasion for the publication of the letter to the plaintiff's congregation, or for his publishing the letter at all. He could have obtained, and perhaps did obtain, the certificate of good character from some of his parishioners without exhibiting the defendants' letter. He chose to read it in the pulpit, and publish it to the members of his church and to the people of the community. For this publication the defendants were not responsible, and the court should have directed the jury, as requested, that the defendants were not responsible for any damages resulting from that publication.

5. Unless there is something in the letter itself to indicate malice, there is no basis for the judgment against the defendant John M. Haven. There is no testimony outside of the letter of any word or act indicating malice. What Mrs. Haven might have said in the absence of her husband does not bind him or show any malice on his part. Neither is the fact that they did not attend church service any evidence of malice.

It is significant that plaintiff introduced no evidence directly bearing upon any one of the charges made in the letter. The charges are similar to those found in *Howard* v. *Dickie*, 120 Mich. 238, in which the plaintiff testified in his own behalf that he had not been guilty of the acts charged. It is the established rule in this State that, in cases of privileged communications, plaintiff must prove both the falsity of the charge and malice. *Edwards* v. *Chandler*, 14 Mich. 471; *Bacon* v. *Railroad Co.*, 66 Mich. 166; *Howard* v. *Dickie*, supra.

This court said in *Bacon* v. *Railroad Co.*, supra:

" The meaning in law of a privileged communication is that it is made on such an occasion as rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact, but not of proving it by extrinsic evidence only. He has still a right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is any evidence of malice on the face of it. *Wright* v. *Woodgate*, 2 Cromp., M. & R. 573, 1 Gale, 329. It was held in *Somerville* v. *Hawkins*, 10 C. B. 583, 20 Law J. C. P. 131, that, a communication being shown to be privileged, it lies upon the plaintiff to prove malice in fact; that, in order to entitle him to have the question of malice left to the jury, he need not show circumstances necessarily leading to the conclusion that malice existed, or such as are inconsistent with its nonexistence, but they must be such as raise a probability of malice, and be more consistent with its existence than its nonexistence; and in *Cook* v. *Wildes*, 5 El. & Bl. 328, it was held that if the occasion creates such privilege, but there is evidence of express malice, either from extrinsic circumstances or from the language of the libel itself, the question of express malice should be left to the jury."

In the well-considered case of *Shurtleff* v. *Stevens*, 51 Vt. 501—the plaintiff being a clergyman, and the charges being of a similar character to those now under discussion —the court, at page 515, uses this language:

" The general cause of public morality which underlies all good government, and which every good citizen, be he

priest or layman, is bound to promote, is affected by the fidelity with which ministers of the gospel discharge the high trust of their appointment. In order to be successful public teachers of morality, they must be unspotted public exemplars of it. Hence, if it be suspected that a wolf in sheep's clothing has invaded their ranks and sits at their council board, it is not only for the interest of all the members of the association to know the fact, but it is their imperative duty to make inquiry and ascertain the fact. They owe such duty to the plaintiff as a brother member, if he is charged with scandalous conduct, to the end that his innocence may be established. They owe it to themselves, lest by indifference they give apparent approval to his conduct. Their intimate official relation to the plaintiff in the cause of their common work leaves them no other alternative, and if, in making such inquiry and in acting upon the subject-matter of it, they proceed with honesty of purpose and act from a sense of duty, the law protects them."

The presumption in cases of privileged communications is that the person acts in good faith and from proper motives. If there is anything in the alleged libelous article or in the surrounding circumstances which shows a bad or vindictive spirit or a feeling of hatred or ill will, the question belongs to the jury. If there is not, it belongs to the court, as a question of law.

The letter complained of makes four specific charges, with no evidence before us to show their truth or falsity. The letter invites the parties to whom it is addressed to investigate, and gives names coupled with an offer to give more names if desired, and courts investigation. If the charges were true, or if the defendants honestly believed them to be true, though they were in fact untrue, and believed them to be incompatible with their church principles, and derogatory to the welfare of the church and community where the church was established, the communication was privileged. Without other evidence than the letter itself to show falsity and malice, the jury were not at liberty to find either or both, without which the verdict and judgment cannot stand. Upon this record, we think the court should have directed a verdict for the defendants.

Other questions are raised, but, as they are not likely to arise upon a new trial, we refrain from determining them.

Judgment reversed, and new trial ordered.

MOORE, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.