KONKLE *v.* HAVEN.

1. LIBEL AND SLANDER—EVIDENCE—ADMISSIBILITY.

In an action against a husband and wife for libel, consisting of a letter purporting to be signed by both of them, but appearing to be entirely in the husband's handwriting, it is error to admit evidence of acts and statements of the wife tending to show malice in advance of anything to connect her with the publication, and, the evidence being of very damaging character, the error is not cured by striking the evidence out.

2. SAME—PUBLICATION—RESPONSIBILITY—INSTRUCTIONS.

In an action for libel, consisting of a letter derogatory to plaintiff's character as a clergyman, written to the board of a church over which he was about to assume charge, it appeared that plaintiff read the letter from his pulpit in the church he was about to leave, and the only other evidence claimed to show publication at that place was a statement in a deposition of one of the church board to whom the letter was addressed, that he was directed by the board to write to the officers of the church and did so and received letters from them. *Held*, that an instruction that defendant was not responsible for the publication at the place plaintiff was about to leave should have been given on request, there being nothing in the deposition tending to show that the letter or its contents were disclosed in the letter passing between the church boards.

Error to Van Buren; Carr, J. Submitted April 10, 1906. (Docket No. 46.) Decided July 3, 1906.

Case by Israel Konkle against John M. Haven and Hattie A. Haven for libel. There was judgment for plaintiff, and defendants bring error. Reversed.

*Frank J. Weston* and *Thomas J. Cavanaugh* (*Dallas Boudeman*, of counsel), for appellants.

*Benj. F. Heckert* and *Barnard & Lewis*, for appellee.

GRANT, J. This case is before us for the second time. 140 Mich. 472. A further statement than is there found is unnecessary. A second trial resulted in a verdict for

the plaintiff. Upon the second trial the plaintiff was a witness in his own behalf, and gave evidence tending to show the falsity of the charges made in the letter, except one, the use of tobacco, which the plaintiff admitted. Plaintiff called both Mr. and Mrs. Haven and questioned them in regard to the authorship of the letter. Mr. Haven admitted writing the letter, and testified that his wife had no hand in writing it, knew nothing about it until after it was written, and was in no manner responsible for it. She testified to the same thing.

1. It is now urged, as it was upon the former trial, that there was no evidence to show malice on the part of Mr. Haven. Without entering into a detail of the evidence, we are satisfied that this question was properly left to the jury. Mr. Haven was not a witness in his own behalf. There was testimony that three of the charges made were false, and we think there was sufficient evidence from which the jury might question his good faith in the matter.

2. Before giving any evidence to connect Mrs. Haven with the publication of the libelous letter, plaintiff was allowed to introduce very damaging statements made by her and also evidence of her conduct towards him. This evidence was continued all through the trial, even after the judge had intimated that there was nothing to connect Mrs. Haven with the publication. We held in the former opinion that Mr. Haven was not responsible for the acts and statements of his wife. This evidence was of such a character that we cannot hold that the error was cured by the order of the court at the close of the trial in striking the testimony out and instructing the jury not to regard it. The evidence of any statements made by Mr. Haven or of his conduct towards plaintiff tending to show actual malice is rather meager. Mr. Haven and other members of the church objected to the plaintiff's marrying a couple, one of whom had been divorced. Plaintiff testified that about the same time he had a conversation with Mr. Haven's father in regard to dividing his property among his children, and that he advised the father, in the pres-

ence of Mr. Haven, to keep control of his property while he lived. Plaintiff testified that "after these difficulties Mr. Haven did not speak to him; that he passed him frequently, but he did not look up." Plaintiff admits that he did not speak to Mr. Haven, but "walked by with my head up like a man." There is little, if anything, in such testimony to show malice on the part of one more than the other. But the statements proven to have been made by Mrs. Haven were different. Plaintiff was permitted to show her appearance and attitude towards the plaintiff. One witness testified that she was bitter against Mr. Konkle on account of that marriage, and that she told witness that Mr. Konkle told her husband that a saloon-keeper could be just as good a Christian as a farmer. Another witness was permitted to testify under objection and exception:

"Did you at any time before this suit was started against Mr. and Mrs. Haven, hear her say anything in reference to Mrs. Konkle having an abortion performed?

"*A.* I don't think that Mrs. Haven stated that to be the fact, she merely intimated it."

Counsel then pursued the matter further and elicited the following:

"*A.* Mrs. Konkle was not in Bloomingdale at the time this conversation took place. She was away visiting, if I remember right. Something was said. Mrs. Haven—I can't remember which of us stated, spoke of Mrs. Konkle's condition at that time. She was in a delicate condition at the time, and Mrs. Haven stated that she—we were speaking about something—I don't remember exactly how it was. Any way Mrs. Haven stated that she had heard it rumored or understood that she was over it at this time.

" *Q.* Say anything with reference—connect anybody's name with it, or anything?

"*A.* I think she did.

" *Q.* Whose?

"*A.* Dr. Ransome's."

Plaintiff was also permitted to testify to a conversation with Mrs. Haven. It was the duty of the court to exclude

any such testimony until Mrs. Haven's responsibility for the libelous article had been established.

3. We held on the former hearing that the defendant was not responsible for the publication of the letter made by the plaintiff himself, and that he could not recover damages for such publication. He read the letter from his pulpit in the church at Bloomingdale. The court below did not instruct the jury that the plaintiff could not recover damages for any publication made by himself, and it does not appear that any request was made to do so. The court was requested to instruct the jury that "the defendant is not responsible and cannot be held liable for the publication of this letter at Bloomingdale."

It is claimed on behalf of plaintiff that there was evidence that this letter was published at Bloomingdale aside from the publication made by the plaintiff himself. The only evidence cited to maintain this claim is the deposition of one Dougal Thompson, taken at Hillsburg, in Canada. This witness testified that the letter was received by one McMillan, a member of the church at Hillsburg. The church board was convened and the letter evidently placed before it. Mr. Thompson testified:

"I was instructed by the secretary of the church board to write to the officers of the church board at Bloomingdale, and received letters from them."

This testimony is not evidence of a publication of the libelous letter at Bloomingdale. It is not stated that the letter or a copy of it was sent to Bloomingdale, or that its contents were stated in the letters written by the witness, or that the name of the defendant was mentioned in the letter written by Thompson. He may have written simply to ascertain more about the character of Mr. Konkle, without any reference whatever to the letter they had received. Upon this record, we think this instruction should have been given.

Judgment reversed, and new trial ordered.

CARPENTER, C. J., and MCALVAY, BLAIR, and MOORE, JJ., concurred.