## ZANLEY *v.* HYDE.

1. LIBEL AND SLANDER—LETTER ACCUSING CRIME—PUBLICATION.

   The writing and sending of an unsigned letter by defendant to plaintiff, a boy about 15 years of age, accusing him of larceny, was no such publication as would support an action for libel, although the letter was received, opened, and read by plaintiff's mother.

2. SAME—PRIVILEGED COMMUNICATION, WHAT CONSTITUTES.

   Where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice.

3. SAME—LETTER TO FATHER OF ACCUSED—DISCHARGE OF MORAL DUTY—QUALIFIEDLY PRIVILEGED.

   Where defendant believed that a boy related to him had taken his children's banks and money and wrote to him to return the same, but, receiving no reply, wrote the facts to the boy's father, such communication was qualifiedly privileged, being written in the discharge of a moral duty.[1]

[1]The question of privilege of communications to relatives of person defamed, is discussed in a note in L. R. A. 1915A, 572.

4. SAME—PRIVILEGE—WHAT DETERMINES.

It is the occasion, and not the language used, which determines whether a communication is qualifiedly privileged.

5. SAME—LIBELOUS PER SE—MALICE PRESUMED.

A letter to a father imputing the crime of larceny to his son is libelous *per se,* and malice will be presumed.

6. SAME—PRESUMPTION REBUTTED WHERE COMMUNICATION PRIVILEGED—BURDEN OF PROOF.

But where it appeared that such communication was privileged, the presumption of malice was rebutted, and the burden of proving actual malice or a lack of good faith on the part of defendant devolved on plaintiff.[1]

7. SAME—EVIDENCE—INTRINSIC—EXTRINSIC—PROOF.

The evidence to prove same may be either intrinsic, being shown by the nature of the language used and the manner and extent of its publication, or extrinsic, consisting of facts which show previous ill-feeling or personal hostility, or that the letter was written without the defendant's having made reasonable inquiry and investigation and not in good faith.

8. SAME—ABSENCE OF MALICE—DIRECTED VERDICT.

Where the record shows that plaintiff's counsel,. at the close of the proofs, and also on motion for new- trial, conceded that there was no evidence of malice, either in law or in fact, in the writing of the letter sued on, the trial judge properly directed a verdict for defendant.

Error to St. Clair; Tappan (Harvey), J. Submitted October 7, 1919. (Docket No. 5.) Decided December 22, 1919.

Case by Floyd Zanley, an infant, by his next friend, against John Hyde for libel. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*McIntyre & Robinson,* for appellant.

*Walsh & Walsh,* for appellee.

---

[1] As to whether malice, which will preclude qualified privilege, be inferred from publication alone, see note in 12 L. R. A. (N. S.) 90.

SHARPE, J. The action is for libel. The defendant had judgment on a directed verdict, and plaintiff appeals. The plaintiff, a boy 15 years of age, residing with his parents in the city of Detroit, was taken by his mother to Yale, Michigan, where she obtained employment for him for the vacation period in 1918 with a farmer named Palmer. The defendant, whose wife is a cousin of plaintiff's mother, lived on a farm near by. Plaintiff frequently visited at defendant's home while working at Palmer's. After a few weeks, Palmer had no further need of plaintiff's services and defendant, at plaintiff's request, consented to plaintiff's staying at his home and agreed to pay him what the service rendered was worth. He remained there from Saturday until the following Friday. The day after plaintiff left, the defendant and his wife missed two small metal banks, in which their children kept their savings. Defendant testified that these banks and where they were kept was talked about in plaintiff's presence on the Sunday he was there and while in their automobile and on their way to a picnic. Defendant's wife testified:

"I remember this trip on Sunday to the lake. My husband and my family and myself and Floyd in the machine. We were at church first and I got lunch ready and we went after that, we took our lunch with us. Floyd was sitting in the front seat with my husband and one of our little boys. And I was in the back seat and I heard my husband say, 'Boys, how about your banks, are they all right and safe?' and one of the little boys said, 'I know they are all right because I put them in the drawer of the kitchen cabinet away back in the drawer of the kitchen cabinet'; he put them there that morning, so he said he knew they were safe, something like that. I had seen the banks in there that morning because I put a dime in one of them for one of the boys. It was so full I could hardly get the one dime in. They were round like a dollar, I don't believe they could be larger than

a silver dollar, and a picture of the Capac Savings Bank on the outside."

They both testify that the banks were missed on the following Saturday, the day after plaintiff left. On August 9, 1918, a few days later, plaintiff's mother received, opened and read the following letter, addressed to plaintiff:

"FLOYD ZANLEY:

"I want you to return that money and things you took from here; if you don't send it back in five days I will go down and take the sheriff and detective from this county. I would do it now only for your mother and father; now if you send it back at once I will not tell your mother or father or any one else, but if you don't, you will get the punishment and I surely will not spare you. I will not sign my name to this so if your mother should get it, she won't know who you took it from, but you know and you return those things with every cent and register them in five days, at the latest, or you will see me."

This letter was written by defendant's wife and, as they both testify, without his knowledge or authority. No answer having been received thereto, defendant's wife wrote plaintiff's father the following letter:

"CAPAC, MICHIGAN.<br>"YALE, MICH., Aug. 17th, 1918.

"Dear Mr. Zanley:

"I wrote to your son, Floyd, about some money that we have proof that he took from here, but he has failed as yet to return it. I told him I would keep it quiet and not tell any one about it if he returned it, but as yet has failed; out of respect for you and your family, I did not make any arrest and thought I would write to you first to see if he told you. From what I have always heard about you, I know you would not want one of your boys to take a thing that didn't belong to them, so if you will have him send it back, I will not have any more trouble about it. I have been busy or would have gone to the city today, but will wait until I hear from you.

"We used Floyd good for the short while he was here; took him to church with us and to the lake, in fact, any place he went which only the last few days he was here and gave him $2 besides. Now, I will want to hear from you.

"I am, respectfully,

"JOHN HYDE,

"Yale, Michigan."

No answer was received to this letter, but on August 22, 1918, plaintiff's attorney wrote defendant as follows:

"MR. JOHN HYDE,

"Yale, Michigan.

"*Dear Sir:*

"Mr. Floyd Zanley and Mr. Charles Zanley have received letters written by yourself, in which you accuse Floyd Zanley of being a thief. At this time, we absolutely deny such charges and demand that you write a letter of apology to Floyd Zanley and to Charles Zanley by return mail. If this advice is not followed, we shall take legal steps to collect for the damages which you have caused this young man by this most cruel libel."

No reply was made by defendant and a few days after plaintiff's mother and the attorney went to defendant's home near Yale to see him. The parties differ as to what there occurred, but it is apparent that defendant insisted that plaintiff had taken the money. While it appears that the letters, received by the mother and father of plaintiff, were written and sent by defendant's wife without his knowledge or assent, they were considered on the trial as though defendant had himself written and mailed them and we so treat them here.

At the close of the proofs, the trial judge directed a verdict for defendant, holding that there was no publication of the letter to plaintiff and that the letter to plaintiff's father was a privileged communication, written in good faith and under an honest belief that

the facts stated therein were true. In the discussion which preceded this action on the part of the court, the record shows that plaintiff's counsel said:

"I agree with the court that I have been unable to produce any evidence of malice either in law or in fact."

He, however, insisted that the letter was not a privileged communication. A motion for a new trial was subsequently made. In denying it, the trial judge said:

"Upon the motion for a directed verdict at the close of the trial, Mr. McIntyre, counsel for plaintiff, in open court, conceded the fact that plaintiff had failed to establish proofs of express malice or malice in fact and claimed that notwithstanding this lack of proof, the question of the *bona fides* of the defendant was still a question of fact for the jury to pass upon. This concession is a matter of record in the case. Again, upon the argument of the present motion, he makes the same concession and claim."

It seems clear that there was no such publication of the letter sent to plaintiff as would justify the action.

Should the question of defendant's liability on account of the letter written to plaintiff's father have been submitted to the jury? The general rule is stated in 25 Cyc. p. 385:

"Where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice."

A distinction, as to such communications, is drawn between absolute and qualified privilege. This is carefully pointed out in *Bacon* v. *Railroad Co.*, 66 Mich. 166. We content ourselves with a reference to it. De-

fendant's claim is one of qualified privilege. As to this, it is said in the *Bacon Case,* just referred to:

"It extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation."

Many cases from this and other courts are cited.

If the defendant believed that the plaintiff had taken the banks and the money therein contained, on his failure to get a reply from plaintiff a moral duty certainly rested on him to communicate the facts to plaintiff's father. This seems particularly true in view of the relationship existing between the families. It is the occasion, and not the language used, which determines the question.

Was there any evidence of malice or a lack of good faith on the part of the defendant in writing the letter to plaintiff's father? The language employed by the defendant imputed the crime of larceny to the plaintiff. It was therefore libelous *per se,* and it follows that malice is to be presumed therefrom. But when it appeared that the communication was privileged, this inference was rebutted and the duty devolved on plaintiff to assume the burden of proving actual malice or a lack of good faith on the part of defendant. The evidence to prove same may be either intrinsic, being shown by the nature of the language used and the manner and extent of its publication, or extrinsic, consisting of facts which show previous ill-feeling or personal hostility, or that the letter was written without the defendant's having made reasonable inquiry and investigation and not in good faith.

The purpose of defendant's wife in writing these letters is apparent. She wanted the children's money

returned. She apparently had no desire to in any way injure plaintiff. She gave him an opportunity to return the money before writing his father about it. While positive in the statement that he had taken it, she says nothing that would indicate she felt any ill-will towards plaintiff.

We cannot but conclude that there is nothing in the language employed which in itself can be said to rebut the inference derived from the privileged nature of the communication. Nor, as we understand plaintiff's brief, does he so contend.

What are the extrinsic facts? The plaintiff was a welcome visitor at defendant's home while employed at Palmer's. He accepted the amount paid him by defendant for the services rendered him and expressed himself as satisfied with it. He left voluntarily. No unkind word was spoken to him while there. There is nothing to show anything but a kindly feeling towards him on the part of the defendant until he found that the banks and the money in them were missing. Defendant claims that he then recalled the conversation in the automobile relative to the banks and where they were kept. One of his children told him that he saw plaintiff searching in the cupboard where the banks were hidden and, on being asked what he was looking for, answered, "A cup." The plaintiff had left, as defendant thought, somewhat hurriedly, it having been his understanding that plaintiff would stay until about September 1, when school opened.

The following language of Erle, C. J., in *Jackson* v. *Hopperton,* 16 C. B. (N. S.) 111 E. C. L. 829, is quoted approvingly in the *Bacon Case:*

"A plaintiff does not sustain the burden of proof which is cast upon him by merely giving evidence which is equally consistent with either view of the matter in issue. When the presumption of malice is neutralized by the circumstances attending the utter-

ance of the slander or the publication of the libel, the plaintiff must give further evidence of actual or express malice in order to maintain his action."

The rule of determination is thus stated in Newell, Slander and Libel (3d Ed.), § 396:

"When the matter complained of is privileged the burden of proving malice lies on the plaintiff; the defendant cannot be called on to prove he did not act maliciously till some evidence of malice, more than a mere scintilla, has been adduced by the plaintiff."

See, also, *Livingston* v. *Bradford*, 115 Mich. 140.

After a careful consideration of the entire record, we feel constrained to say that the verdict for defendant was properly directed. The judgment is therefore affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.