## BUFALINO v. MAXON BROTHERS, INC.

1. Appeal and Error—Nature of Action—Findings of Trial Court—Record.

Findings of trial court that action plaintiff had brought against defendant real-estate brokers, its employees, a brokers' association and a property owners' association, was an action for libel and slander and not a suit for damages for a conspiracy to keep plaintiff out of a common market nor to test the legality of a system of screening prospective purchasers of property *held*, supported by record.

2. Libel and Slander—Publication.

Publication of libelous matter is essential to liability to respond in damages therefor.

3. Same—Statement by Real-Estate Broker to Property Owner.

Record in action against defendant real-estate broker and its employees which did not disclose plaintiff was held up to contempt, scorn, or ridicule, supported finding that employee involved was not subject to liability for slander *per se* because the broker's employee had called the owner of the property, represented by the broker, and informed the owner that plaintiff, a prospective purchaser, had not passed a test which a property owners' association had devised for screening prospective purchasers.

4. Same—Publication—Evidence.

Record in action by prospective purchaser against a property owners' association and real-estate brokers' association and their

---

References for Points in Headnotes

[2] 33 Am Jur, Libel and Slander § 90.
[4] 33 Am Jur, Libel and Slander § 103.
[5-7] 33 Am Jur, Libel and Slander § 126.
[8] 33 Am Jur, Libel and Slander § 113.
[9] 33 Am Jur, Libel and Slander § 111.
[10] 33 Am Jur, Libel and Slander § 264.
[12] 3 Am Jur, Appeal and Error § 895 *et seq.*
[13] 33 Am Jur, Libel and Slander § 271.
[14] 33 Am Jur, Libel and Slander §§ 266, 274.

employees *held,* to fail to show participation by the brokers' association or any of its employees in any publication of a libel which resulted in plaintiff being excluded from right to purchase property in a particular subdivision.

5. SAME—QUALIFIED PRIVILEGE.

A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do.

6. SAME—QUALIFIED PRIVILEGE.

A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.

7. SAME—CONDITIONALLY PRIVILEGED COMMUNICATION.

The essential elements of a conditionally privileged communication are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only; the privilege arising from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and not restricted within any narrow limits.

8. SAME—QUALIFIED PRIVILEGE—MALICE—GOOD FAITH.

A qualifiedly privileged communication is actionable if made with actual malice, but not if made in good faith.

9. SAME—MALICE IN FACT.

Malice in fact means ill will against a person and implies a desire and intention to injure.

10. SAME—PRIVILEGED COMMUNICATION—CIRCUMSTANCES—PRESUMPTIONS—REBUTTAL CIRCUMSTANCES—BURDEN OF PROOF.

A privileged communication is made on such an occasion as rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff and throws upon the latter the onus of proving malice in fact and not of providing it by extrinsic evidence only.

11. SAME—QUALIFIED PRIVILEGE—FINDING OF COURT.

Finding of trial court that defendant employee of owner's real-estate broker had not referred to plaintiff as a *hoodlum* or *gangster*, when conversing with plaintiff's agent, as a specific finding of fact is not disturbed under record presented in action for libel and slander, where such remark, if made, was under circumstances as would establish it as qualifiedly privileged.

12. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF EVIDENCE.

The Supreme Court does not reverse the judgment of a trial judge who heard a nonjury action at law unless the evidence clearly preponderates to the contrary or unless there were errors of law.

13. LIBEL AND SLANDER—NOTICE OF JUSTIFICATION.

A notice of justification is not evidence of malice and should not be treated as a republication of the libel where no facts are put in issue except those declared on (CL 1948, § 620.19).

14. SAME—QUALIFIED PRIVILEGE—ACTUAL MALICE—BURDEN OF PROOF.

The plaintiff has the burden of proving the untruth of statements and actual malice, where the statements are made on an occasion subject to a qualified privilege.

15. SAME—QUALIFIED PRIVILEGE—GOOD FAITH—PRESUMPTIONS.

Statements made under circumstances raising a qualified privilege are not actionable if made in good faith, dishonesty of purpose not being lightly inferable from facts which are just as consistent with good faith as with bad faith and if the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the presumption of good faith not having been overcome (CL 1948, § 620.19).

16. SAME—PROPERTY OWNERS' ASSOCIATION'S INVESTIGATING COMMITTEE—REPORT—GOOD FAITH.

Report of investigation by examining committee of property owners' association relative to plaintiff, a prospective purchaser of lots in subdivision, *held*, not to have been shown, in the record in plaintiff's action against that association, a real-estate brokers' association and their employees for libel and slander, to have been prepared with an intention to injure plaintiff.

17. SAME—MALICE—EVIDENCE—QUALIFIED PRIVILEGE.

Neither express nor actual malice *held*, to have been shown in prospective real-estate purchaser's action for libel and slander, brought against property owners' association, association of real-estate brokers, a broker and its employees, hence, commu-

nication made to plaintiff's agent, even if slanderous, was not actionable, where made under circumstances giving rise to a qualified privilege.

18. SAME—QUALIFIED PRIVILEGE—EXCESSIVE PUBLICATION.
    Distribution of card which resulted from the efforts of an investigating committee of property owners' association, which contained the names of plaintiff, his wife, their address, his business connection, and the notation "Inv.: October 16, 1959", to members of a real-estate brokers' association, 7 nonmember brokers and 1 nonmember builder, *held,* not to have lost the character of qualified privilege because of excessive publication.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted April 5, 1962. (Docket No. 33, Calendar No. 49,231.) Decided October 1, 1962.

Case by William E. Bufalino against Maxon Brothers, Inc., a Michigan corporation, Paul Maxon, Richard L. Maxon, Bernard Whitley, Axel P. Holt, Grosse Pointe Property Owners Association, a Michigan corporation, and Grosse Pointe Brokers Association, a Michigan corporation, for libel and slander and for damages arising from actions establishing discriminatory standards to keep him from becoming property owner in Grosse Pointe area. Judgment for defendants. Plaintiff appeals. Affirmed.

*Burns & Mantho (Lawrence A. Burns,* of counsel), and *William E. Bufalino, in propria persona,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant Maxon Brothers, Inc., and for individual defendants.

*Orville F. Sherwood* and *James C. Worth,* for defendant Grosse Pointe Property Owners Association.

*Moll, Desenberg, Purdy, Glover & Bayer,* for defendant Grosse Pointe Brokers Association.

KELLY, J. February 5, 1960, plaintiff filed his declaration naming 7 defendants, claiming they were engaged in a conspiracy in the real-estate business in Grosse Pointe and that by uttering and publishing defamatory statements "the plaintiff was injured in his reputation in the sum of $1,000,000."

Defendant Grosse Pointe Brokers Association (hereinafter referred to as "brokers") is a nonprofit, nonstock corporation organized by brokers in the area, with its membership limited to licensed real-estate brokers.

Defendant Grosse Pointe Property Owners Association (hereinafter referred to as "property owners") is a nonprofit, membership Michigan corporation, organized in 1951 for the purpose of maintaining property values in Grosse Pointe.

Defendant Maxon Brothers, Inc., is a Michigan corporation, duly authorized and licensed to do business and doing business as real-estate brokers in the State of Michigan; more particularly it does business in the Grosse Pointe area in and about Wayne county, Michigan.

Defendants Whitley, Holt, Paul Maxon, and Richard L. Maxon are employees of Maxon Brothers, Inc.

October 12, 1959, plaintiff contacted Maxon Brothers regarding the purchase of Grosse Pointe property located at 805 Essex. Maxon Brothers requested defendant property owners for a report on plaintiff, and defendant property owners followed its past practice and submitted plaintiff's name to private detective, Earl H. Grady.

On a form he had used in making previous investigations for defendant property owners, Grady filled in the form in longhand, and plaintiff contends the following constituted libelous language:

"SECTION B.  GENERAL STANDING  * * *

"(2)  Have his dealings been considered reputable?
"No (see narrative).

"(3)  How has his family been thought of in previous neighborhoods?

"Highly? . . . . Medium? . . . . Of bad repute? . . x . .

"SECTION D.  NARRATIVE:  * * *

"Operator found most of his neighbors to be obviously afraid to give even the simplest information about the subject.  This apparently is because of a reputation for violent direct action when he or his associates are opposed in any manner."

Detective Grady forwarded his written report to a secretarial service which did work for defendant property owners, where it was typed by clerical stenographer Eleanor Friedel, and copies were mailed to the executive secretary of property owners and to a screening committee for the purpose of evaluating the report.

The 3 members of the screening committee were not appointed for the purpose of evaluating the Bufalino report, as they were members of a revolving standing committee under an arrangement between defendant property owners and defendant brokers at the time plaintiff made his inquiry in regard to purchasing.  The membership of this committee changed every 3 months by taking 1 real-estate broker off the committee and adding another.

Each of the 3 members of this committee made his own separate evaluation and mailed same to Eleanor Friedel and when she noted the 3 scoring grades, namely 52, 41, and 39, constituted a grade showing the plaintiff had "not passed," she, following the practice of the past, prepared a 3x5 inch card which contained the following:

"BUFALINO, WILLIAM E.
"Wife:  Antoinette Bufalino
"Res.:  12353 Wilshire
        Detroit
"Bus.:  AF of L-CIO Teamsters
        Local #985
        2741 Trumbull
        Detroit, Michigan
"Inv.:  October 16, 1959."

She mailed this card to a list on file of real-estate firms, a list which had previously been submitted by defendant brokers and, also, to defendant owners' executive secretary, and on or about October 16, 1959, Maxon Brothers were advised that plaintiff had not passed the reference test.

January 5, 1960, Robert Dargel, a builder, contacted Maxon Brothers' employee, Whitley, concerning the purchase of property in the Effton subdivision, and the following day Whitley brought to Dargel's home a plat, price list, application form, and a set of building restrictions.

Plaintiff's wife obviously obtained the application, as she signed same and brought it to Whitley at the Maxon office on January 9, 1960. January 10, 1960, Paul Maxon called Mr. Semmes (agent for Effton Realty Company) and told him of plaintiff's application and Semmes replied: " 'He is the man that has been before the McClellan Committee and we don't want him in our property.' "

January 11, 1960, Maxon informed Mrs. Bufalino that Mr. Semmes had refused to sell and he also made that fact known to plaintiff on the same day.

January 16, 1961, a jury was waived and trial commenced before the Hon. Horace W. Gilmore, circuit judge of Wayne county. At the close of plaintiff's proofs, February 7, 1961, the court granted defendants' motion to dismiss defendants Holt, Paul

Maxon, Richard L. Maxon, and Grosse Pointe Brokers Association, but reserved decision as to defendants Whitley, Grosse Pointe Property Owners Association, and Maxon Brothers, Inc.

February 16, 1961, the trial concluded and the court found for defendants Whitley, Grosse Pointe Property Owners Association, and Maxon Brothers, Inc., and against plaintiff. Judgment was entered accordingly and the cause dismissed as to remaining defendants.

Plaintiff and defendants differ as to what type or kind of case plaintiff brings to this Court on appeal. Plaintiff in his brief to this Court states: "This is a case of libelous conspiracy. This is a defamation action in tort for libel and slander brought by the plaintiff, an attorney and counselor-at-law, against the defendants, on the 6th day of February, 1960. It is a damage suit for a conspiracy which kept the plaintiff out of a common market."

Defendant brokers maintain to this Court that this is not so, and state:

"Plaintiff-appellant brought this action February 5, 1960, to recover damages for alleged libel and slander. This is not 'a case of libelous conspiracy' nor is it a damage suit for a 'conspiracy which kept the plaintiff out of a common market' as claimed in appellant's statement of facts."

Defendant property owners join in disputing plaintiff's contention, by their statement: "As pertains to this appellee, this is a defamation action in tort for libel."

Defendants Maxon Brothers, Inc., Paul Maxon, Richard L. Maxon, Whitley, and Holt, emphasize the disagreement by commencing their counter-statement of facts as follows: "Contrary to the first assertion of plaintiff-appellant in his brief, this is

not a case of conspiracy to libel; this is a simple action for libel and slander."

The pretrial statement sets forth plaintiff's claim:

"This is a matter arising out of certain alleged slanderous statements and libelous matters issued and published by the defendants herein, defaming the character of the plaintiff and causing him damages, and for damages arising out of other personal damages resulting from the said language or statements.

"It is the contention of the plaintiff William E. Bufalino, that he has been defamed by slanderous statements uttered, and that libelous statements regarding him have been published. And, as a result of such libelous and slanderous statements, he has been injured in his community; that his reputation in the community in which he lives has been affected; that he has been held out to public hate, ridicule and scorn; that, in addition, as a direct result of such libelous and slanderous statements, he has been greatly injured in his profession, occupation and offices."

In rendering an opinion on the motions to dismiss (February 7, 1961), the court stated:

"All right, gentlemen, on the motions to dismiss, the case here obviously arises out of the screening process in the Grosse Pointe community in which the claim of libel is made because of a screening sheet which has been received into evidence in 2 or 3 different forms, both with the marginal notations and without the marginal notations where certain comments were made with reference to the plaintiff, Mr. Bufalino, and upon the basis of an 'inv' card mailed to all members of the brokers association and 3 additional brokers, the claim being that the 'inv' card libeled Mr. Bufalino because it had a special meaning to the brokers receiving it, and that publication was to the brokers, the claim being that the screening report libeled Mr. Bufalino insofar as it was pub-

lished to the 3 brokers who graded it, to the people in the office and also there is a claim of publication by negligence in allowing Eugene Boylan to take the sheet and distribute it and publish it further.

"The claim of slander in the case is based upon the statement of Mr. Whitley to Mr. Dargel and it is conceded by the defendants Maxon Brothers, Inc., that the doctrine of *respondeat superior* applies with reference to them with reference to any statement made by Whitley to Dargel in the course of his employment.

"With reference to the libel first, there is a clear showing made on this record of screening by the property owners association to keep out of Grosse Pointe all those that they deemed undesirable. There is no claim made in this case by the plaintiff that the screening alone defamed the plaintiff, Mr. Bufalino. I want to make it clear at the outset here that the court does not in any way condone the Grosse Pointe screening system, but this is not an action here to test the legality of the screening system nor any other of the possible varieties of actions that could be brought to seek State enforcement of the screening system or State action against it. We are not testing the legality nor the morality of that system except insofar as Mr. Bufalino was libeled and slandered. The issues in this case are issues of libel and slander. It is perfectly possible the screening system might eventually, and I don't rule on this because I don't have to, bear on the question of qualified privilege. The qualified privilege is an affirmative defense and is not before us now."

In its opinion on motion for new trial, the court forcibly stated, "this is a libel and slander suit," as disclosed by the following:

"I want to make a few preliminary observations, and I can't make this first observation too strongly. This is a suit by Mr. Bufalino against the named defendants for libel and slander arising out of the screening report, the 'inv' card and the conversation

between Dargel and Whitley. This is not a suit for injunction against the Grosse Pointe Brokers Association to prevent them from discriminating. This is not a suit for damages for a conspiracy to keep out of a common market. But this is a libel and slander suit and as I tried throughout the case to point this out, and as I reiterated in my 2 opinions rendered, I reiterate now. I say very strongly and very firmly and I hope this is the last time I have to speak on this, I do not condone the screening system of the city of Grosse Pointe.* I do not condone any system of that nature that deliberately excludes people from minority groups from occupancy of property. But I think we must not and we cannot mix up that question with the question before the court, namely, the question of whether the defendants in this case are liable for libel and slander."

The record sustains the trial court's findings that: "This is not a suit for damages for a conspiracy to keep out of a common market," and "We are not testing the legality nor the morality of that system (screening) except insofar as Mr. Bufalino was libeled and slandered. The issues in this case are issues of libel and slander."

The law of the State requires publication of the libelous matters as essential to the liability therefor. See *Konkle* v. *Haven,* 140 Mich 472, and *Zanley* v. *Hyde,* 208 Mich 96.

Defendant Paul Maxon did not know that defendant Holt gave appellant's name to defendant Richard L. Maxon, or that Richard Maxon requested a reference report, and did not see the reference report or the "inv" card until after plaintiff threatened the libel suit. Paul Maxon's part is confined to his call to Semmes, the agent of the owner of the property, submitting plaintiff as a prospective purchaser. This call to Semmes was made January 10, 1960,

---

* No implication of an official municipal act is intended. Any screening has obviously been by private agencies.—Reporter.

after Paul Maxon had received from Whitley a verbal report that plaintiff's name was marked "inv" in the office book.   The record discloses that Paul Maxon did not hold plaintiff up to contempt, scorn, or ridicule, but confined his statements to the fact that plaintiff did not pass, and the court correctly found that "no liability can attach to him for slander *per se* upon this statement."   Maxon Brothers, Inc., were representing the owner as its broker, and Paul Maxon's telephone call to Semmes would not constitute a publishing.

Defendant Holt's participation was confined to giving plaintiff's name to Richard Maxon and asking him whether there should be a screening.   This did not constitute publication.

There is nothing in the record to prove that the Grosse Pointe Brokers Association in any way participated in the publication.   We do not agree with appellant's contention that in the absence of such proof defendant Grosse Pointe Brokers Association should be held liable because the Grosse Pointe Property Owners Association is the agent of Grosse Pointe Brokers Association, and in that regard we approve the following finding of the court:

"There is no showing here or charge that the brokers association participated in the libel, nor did any of their agents participate in the libel, nor that they published any libel, nor did any of their agents, because I do not see how you can say that the Grosse Pointe Property Owners Association, a totally separate nonprofit corporation, is the agent of the Grosse Pointe Brokers Association for the purpose of any libel as far as Mr. Bufalino is concerned; so the motion to dismiss as to the brokers association will be granted."

The court did not commit error when it dismissed defendants Holt, Paul Maxon, Richard L. Maxon,

and Grosse Pointe Brokers Association at the close of plaintiff's case.

The court in its opinion dismissing the remaining defendants (Maxon Brothers, Inc., Whitley, and Grosse Pointe Property Owners Association), stated that Maxon Brothers' "liability, or lack thereof, rises and falls with Whitley"; that "The statement that Bufalino is not acceptable in Grosse Pointe, the court does not feel in a slander action is defamatory *per se,* because before anything can be defamatory *per se,* it must either hold the person up to contempt, ridicule, or scorn, impute crime, impute unchastity in a woman, or impute loathsome disease, and the mere stating that Bufalino is not acceptable in Grosse Pointe in the court's mind does not fall within any 1 of those 4 categories.

"With reference to the statement he is in the juke box business, certainly that in and of itself is not defamatory. The juke box business is a perfectly legitimate business and the fact that a person is in that business does not in any way defame him.

"The statement that he is of the Reuther element equally in the court's mind does not constitute defamation, because there is no showing that being a member of the Reuther element is in any way defamatory of anyone, and no such showing is made in this record.

"So that leaves the final statement that he is a hoodlum and gangster and such and that statement certainly would be under normal circumstances, if not privileged and if said, actionable *per se,* because it does impute crime and it does hold a person up to contempt, ridicule, and scorn"; that there was a qualified privilege with reference to Whitley's statement to Dargel, and that "because this is not a civil rights question, because this publication falls within the mutual business exception of qualified privilege, the court feels that the Grosse Pointe Property

Owners Association is entitled to a qualified privilege."

Appellant claims the court committed error in applying the principle of qualified privilege.

In a recent opinion (1958), *Timmis* v. *Bennett,* 352 Mich 355, we (1) approved the following quotation from 33 Am Jur, Libel and Slander, § 126, pp 124–126 (pp 368, 369):

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits' ";

and (2) declared a qualifiedly privileged communication is actionable if made with actual malice, but not if made in good faith; that malice in fact means ill

will against a person and implies a desire and intention to injure; and (p 367) that a privileged communication is made on such an occasion as rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff and throws upon the latter the onus of proving malice in fact and not of proving it by extrinsic evidence only.

The court, deciding that "no cause for action will be entered as against Whitley and against Maxon Brothers, Inc." stated:

"The plaintiff in this case claims that qualified privilege with respect to Mr. Whitley is not applicable because, he says, there is no showing here that there was any agency of Mr. Dargel at the time of the conversation with Mr. Whitley. The court does not agree with this position. I feel there is a qualified privilege with reference to Whitley's statements because, first, Dargel would not have been talking to Whitley but for the fact that he was asking for property for Mr. Bufalino. This particular conversation never would have happened had it not been for the fact that he was dealing on behalf of Mr. Bufalino.

"Furthermore, we have Mr. Bufalino's own testimony that was read to the court in argument and which was elicited from him on cross-examination where he said that Dargel was there as his agent. I repeat, the only reason Dargel was talking to Whitley on this occasion was because he was there for and on behalf of Bufalino as his agent, and the court feels that in view of the fact that he was there for and on behalf of Bufalino as his agent, a mutual business relationship arose within the meaning of the language that I have read from the various cases and text authorities and as such entitled that conversation to a qualified privilege."

The only testimony in this record in re "hoodlum" and "gangster" is Dargel's testimony claiming that

Whitley so described plaintiff. In finding that
Whitley did not make that statement to Dargel, the
court said:

"This (qualified privilege) would thus settle this
and justify in and of itself the entry of a judgment
of no cause for action on behalf of Mr. Whitley and
Maxon Brothers, Inc. However, Mr. Burns has
specifically asked that the court make a special
finding of fact as to all factual matters here and
a specific finding of law as to the defendants. This
is the 1 case in this whole record where there is a
real dispute of fact as to the testimony. Mr. Dargel
has said flatly that Mr. Whitley said that Mr. Bufa-
lino was a hoodlum and a gangster. Mr. Whitley
has flatly denied that repeatedly and under careful,
thorough, and complete cross examination. It has
been very difficult for the court to determine whether
the statement was made or not, and as I say I feel
I could pass it without ruling on it or making a
determination, but in view of the fact that Mr. Burns
has specifically asked that such determination be
made, the court has attempted in some possible way
to reconcile the difference in the testimony of these
2 people. Obviously it is unreconcilable as to this
one. Carefully weighing the testimony, however,
the court has come to the conclusion that it is not
logical to assume that Mr. Whitley said this, and
this is because of the conversation between Mr.
Bufalino and Mr. Maxon on January 11, 1960. It
seems to the court that if Mr. Bufalino on January
11, 1960, had been told by Mr. Dargel that Mr.
Whitley had called him a hoodlum and a gangster,
it is only natural that the first thing he would have
done would have been to protest to Maxon that 'your
man called me a hoodlum and a gangster.' This he
did not do and upon that basis I find as a matter
of fact that the statement was not made by Whitley."

In addition to claiming that the court erred in
applying the principle of qualified privilege, ap-
pellant also claims errors were committed in deciding

that Dargel was the agent of appellant and that Whitley did not utter the words "hoodlum" and "gangster."

Dargel testified that he met with Mrs. Bufalino after she had informed him that she was interested in building a new home and he said that she described the type of house she desired to build and, also, made a preference as to location; that he contacted Whitley on January 5th or 6th concerning lots in Effton subdivision and Whitley met with him at his home, taking with him an application and material relating to the subdivision; that "going over this plot plan I thought that lots numbered 17 and 18 were terrific deals because vacant property in Grosse Pointe Shores is running for around $22,000 an acre, and these 2 particular lots were an acre and a half and the asking price was less than $22,000 an acre, so I said that I would be interested in these lots if my client would be"; that I then told him that my client was Mr. Bufalino and he said that "he didn't think that Mr. Bufalino would be acceptable in there," "that he was a member of the Teamsters Union," that he was "involved in the juke box business," and "was a hoodlum and a gangster."

Whitley testified that Dargel was a neighbor of his and that he had had business contacts with him previously; that he conferred with Dargel about January 5th and at the time of his conference he did not know Bufalino had been through the screening process and did not know that fact until after Mrs. Bufalino brought the application to the Maxon office on January 9th.

Whitley denied that in his conversation with Dargel he ever mentioned the name of "Reuther" or called Bufalino a "gangster," or ever mentioned screening, or that he ever said Bufalino was in the "juke box racket."

In deciding that the trial court did not commit error in finding no cause of action against Whitley and Maxon Brothers, Inc., we call attention to our decision in *Kenney* v. *Hatfield,* 351 Mich 498, where we held that the Supreme Court does not reverse the judgment of a trial judge who heard a nonjury action at law unless the evidence clearly preponderates to the contrary or unless there were errors of law.

The trial court held there was a qualified privilege existing between the Grosse Pointe Property Owners Association and the brokers. Appellant claims that a qualified privilege does not apply, but even though it did, it would not because the court committed error "when it failed to find malice in fact since the defendant-appellees pleaded truth as a defense and made no effort to prove their libelous statements" and, also, because there was "excessive publication."

Appellant contends: "In the case at bar, actual malice was evidence since no attempt was made to prove the truth of the false statements made."

CL 1948, § 620.19 (Stat Ann § 27.1369), provides:

"If the defendant in any action for slander or for publishing a libel, shall give notice in his justification that the words spoken or published were true, such notice, though not maintained by the evidence, shall not, in any case, be of itself proof of the malice charged in the declaration."

A notice of justification is not evidence of malice and should not be treated as a republication of the libel and no facts are put in issue except those declared on (*Wheaton* v. *Beecher,* 79 Mich 443); in an action of libel where it appears that the occasion is subject to a qualified privilege, the burden is upon the plaintiff to prove the untruth of the statements and actual malice (*Van Vliet* v. *Vander Naald,* 290 Mich 365); where a privilege is qualified the com-

munication is not actionable if made in good faith, and dishonesty of purpose may not be lightly inferred from acts which are just as consistent with good faith as with bad faith and if the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the presumption of good faith has not been overcome (*Powers* v. *Vaughan,* 312 Mich 297, 307).

There is nothing in the record to prove that the report of investigation was prepared with an intention to injure plaintiff, nor is there proof of express or actual malice.

The trial court correctly ruled that qualified privilege was not lost because of malice.

It is appellant's contention there was an excessive publication, and he sums up his position as follows:

"Defendant-appellees seemed to think that they could publish the 'broadcast' slips or 'inv' cards to anyone in the real-estate business. They admitted sending them to all broker-members of the Grosse Pointe Brokers Association, and, in addition, to at least 7 nonmember brokers and to at least 1 nonmember builder. This was attested to by Mr. Sherwood as heretofore shown."

The "inv" card contained the name of plaintiff and his wife, their residence address, and the fact that his business was connected with "AF of L–CIO Teamsters Local #985, 2741 Trumbull," with the notation "Inv.: October 16, 1959."

Appellant admits "It is true that the 'broadcast' slip or the 'inv' card contains no ostensibly damaging words."

Applying the definition of qualified privilege as stated in *Timmis* v. *Bennett,* quoted above, the record sustains the finding that the communication was privileged, and the trial court did not err in finding

"that the Grosse Pointe Property Owners Association is entitled to a qualified privilege."

The above conclusions eliminate the necessity of discussing the remaining errors claimed by appellant.

Affirmed.   Costs to appellees.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., did not sit.