MORGANROTH v WHITALL

Docket No. 91215. Submitted April 14, 1987, at Detroit. Decided July 21, 1987.

Shila Morganroth brought an action against Susan Whitall and the Evening News Association, Inc., in the Wayne Circuit Court alleging libel and invasion of privacy by placing plaintiff in a false light. The court, Lucile A. Watts, J., granted summary disposition for defendants. Plaintiff appealed.

The Court of appeals *held:*

A published article must be read as a whole and fairly and reasonably construed in determining whether a portion is libelous in character. Read as a whole, the publication complained of was substantially true and, therefore, not libelous or an invasion of privacy by false light.

Affirmed.

1. LIBEL AND SLANDER — DEFAMATION.

The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publishers, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

2. LIBEL AND SLANDER — DEFAMATION.

A court may determine as a matter of law whether words alleged to be defamatory are capable of carrying a defamatory meaning; a communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him, considering the circumstances in which the language is used.

REFERENCES

Am Jur 2d, Libel and Slander §§ 8 *et seq.*, 146 *et seq.*, 383 *et seq.*
Am Jur 2d, Privacy §§ 2, 26.
See the annotations in the Index to Annotations under Libel and Slander.
See the annotations in the Index to Annotations under Privacy.

3. LIBEL AND SLANDER — PUBLISHED ARTICLES.

   A published article must be read as a whole and fairly and reasonably construed in determining whether a portion is libelous in character.

4. PRIVACY — INVASION OF PRIVACY — FALSE LIGHT.

   False light invasion of privacy is publicity which places the plaintiff in a false light in the public eye.

*Gruel, Mills, Nims & Plyman* (by *Grant J. Gruel* and *Scott R. Melton*), for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel* and *James E. Stewart*), for defendants.

Before: J. H. GILLIS, P.J., and BEASLEY and SAWYER, JJ.

SAWYER, J.

   "Truth is a torch that gleams through the fog without dispelling it."

                              —Claude Helvetius, *De l'Esprit.*

   In this heated dispute, the trial court granted summary disposition in favor of defendants on plaintiff's claims of libel and invasion of privacy by false light. Plaintiff now appeals and we affirm.

   Plaintiff alleges that she was libeled and cast in a false light by an article written by defendant Whitall which appeared in the Sunday supplement of the Detroit News on November 11, 1984. The article was entitled "Hot Locks: Let Shila burn you a new 'do." The article was accompanied by two photographs, one depicting plaintiff performing her craft on a customer identified as "Barbara X" and the second showing Barbara X and her dog, identified as "Harry X," following completion

of the hairdressing. Central to the article was the fact that plaintiff used a blowtorch in her hairdressing endeavors. According to the article, plaintiff's blowtorch technique was dubbed "Shi-lit" and was copyrighted.[1] The article also described two dogs, Harry and Snowball, the latter belonging to plaintiff, noting that the canines have had their respective coats colored at least in part. The article also indicated that the blowtorch technique had been applied to both dogs. Additionally, the article described plaintiff's somewhat unusual style of dress, including a silver holster for her blowtorch and a barrette in her hair fashioned out of a $100 bill. Much of the article devoted itself to plaintiff's comments concerning her hairdressing and the trend of what, at least in the past, had been deemed unusual in the area of hair styles.

Plaintiff's rather brief complaint alleges that the article, when read as a whole, is false, misleading and constitutes libel. More specifically, the complaint alleges that the article used the terms "blowtorch lady," "blowtorch technique" and the statement that plaintiff "is dressed for blowtorching duty in a slashed-to-there white jumpsuit" without any factual basis and as the result of defendants' intentional conduct to distort and sensationalize the facts obtained in the interview. The complaint further alleges that the article falsely portrayed plaintiff as an animal hairdresser, again as part of a deliberate action by defendants to distort and sensationalize the facts. In her brief on appeal, plaintiff also takes exception to her being cast as an animal hairdresser and claims as inac-

---

[1] Sic. While this is not an intellectual property case, we note in passing that it would seem more reasonable that the blowtorch technique would be subject to patent law and the term "Shi-lit" would constitute a trademark, rather than coming under the terms of copyright law. However, we leave it to a more appropriate forum to decide this burning issue if it should ever become relevent.

curate the portrayal in the article that she does "mutt Mohawks for dogs" and the reference to "two canines who have been blowtorched."

Defendants brought their motion for summary disposition pursuant to both MCR 2.116(C)(8), failure to state a claim, and MCR 2.116(C)(10), no genuine issue of material fact. Unfortunately, the trial court's ruling does not identify under which subrule summary disposition was granted. While the trial court's failure to identify which subrule was relied upon complicates this appeal, our review of the case leads us to believe that the issue is more properly analyzed under subrule 10, no genuine issue of material fact. Accordingly, we will analyze the issue on that basis.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Stenke v Masland Development Co, Inc,* 152 Mich App 562; 394 NW2d 418 (1986). In ruling on this motion, the trial court must consider not only the pleadings, but also depositions, affidavits, admissions and other documentary evidence, MCR 2.116(G)(5), and must give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). Summary disposition is appropriate under this subrule only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which cannot be overcome. *Hetes v Schefman & Miller Law Office,* 152 Mich App 117; 393 NW2d 577 (1986). We begin by noting that plaintiff failed to comply with MCR 2.116(G)(4), which requires that a party opposing a motion brought under subrule 10 not rest merely upon the allegations or denials of his pleadings, but come forward with evidence to establish the existence of a material factual

dispute. If the nonmoving party fails to establish that a material fact is at issue, the motion is properly granted. *Stenke, supra.* As noted by defendants and admitted by plaintiff at the motion hearing, plaintiff has failed to file any response to defendants' motion and has come forward with no evidence to support a finding that a genuine issue of material fact exists.

The elements of defamation were stated by this Court in *Sawabini v Desenberg,* 143 Mich App 373, 379; 372 NW2d 559 (1985):

> The elements of a cause of action for defamation are: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod)*". *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 315 NW2d 511 (1982), lv den 417 Mich 1050 (1983), citing Restatement Torts, 2d, § 558; *Curtis v Evening News Association,* 135 Mich App 101, 103; 352 NW2d 355 (1984); *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583; 349 NW2d 529 (1984).

See also *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157, 173-174; 398 NW2d 245 (1986).

The *Sawabini* Court further commented on the appropriateness of dismissing a defamation claim by summary disposition:

> The court may determine, as a matter of law, whether the words in question, alleged by plaintiff to be defamatory, are capable of defamatory meaning. See, *e.g., Ledsinger v Burmeister,* 114 Mich App 12, 21; 318 NW2d 558 (1982). Where the

words are, as a matter of law, not capable of carrying a defamatory meaning, summary judgment under GCR 1963, 117.2(1) is appropriate. See *Lins v Evening News Association,* 129 Mich App 419, 422; 342 NW2d 573 (1983).

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Nuyen v Slater,* 372 Mich 654, 662, fn; 127 NW2d 369 (1964); *Ledsinger v Burmeister,* 114 Mich App 12, 21; 318 NW2d 558 (1982)." *Swenson-Davis v Martel,* 135 Mich App 632, 635-636; 354 NWd 288 (1984), *lv den* 419 Mich 946 (1984). In assessing whether language is defamatory, the circumstances should be considered. *Ledsinger v Burmeister, supra.* [143 Mich App 379-380.]

In determining whether an article is libelous, it is necessary to read the article as a whole and fairly and reasonably construe it in determining whether a portion of the article is libelous in character. *Sanders v Evening News Ass'n,* 313 Mich 334, 340; 21 NW2d 152 (1946); *Croton v Gillis,* 104 Mich App 104, 108; 304 NW2d 820 (1981).

Reading the article as a whole, we believe that it is substantially true; therefore plaintiff's complaint lacks an essential element of her defamation claim, namely falsity. In looking at plaintiff's specific allegations of falsity, for the most part we find no falsehood. Considering as a group the various references to plaintiff's using a "blowtorch" in hairstyling, we note that *The Random House College Dictionary, Revised Edition* (1984), defines "blowtorch" as follows:

> [A] small portable apparatus that gives an extremely hot gasoline flame intensified by air under pressure, used esp. in metalworking.

In looking at the photographic exhibits filed by defendants, we believe that the instrument used by plaintiff in her profession can accurately be described as a blowtorch.[2] Accordingly, while the use of the term "blowtorch" as an adjective in connection with references to plaintiff or her hairdressing technique may have been colorful, it was not necessarily inaccurate and certainly not libelous. As for the reference that plaintiff was "dressed for blowtorching duty in a slashed-to-there white jumpsuit," we have examined the photographic exhibits submitted by defendant at the motion hearing and we conclude that reasonable minds could not differ in reaching the conclusion that plaintiff did, in fact, wear a jumpsuit "slashed-to-there."

Finally, while having disposed of the allegedly libelous claims contained in the complaint, we briefly turn to the additional allegations of false statement listed in plaintiff's brief on appeal. In her brief, plaintiff claims that defendants inaccurately described her as being a hairdresser for dogs, giving dogs a Mohawk cut, and using a blowtorch on the dogs. While it appears that plaintiff did do hairdressing on dogs, it is not necessarily certain at this point that she did, in fact, use the blowtorch on the dogs. However, as noted above, plaintiff filed no response to the motion for summary disposition in the trial court and, thus, presented no affidavits or other evidentiary showings that the statements in the article were false. Thus, there has been no showing by plaintiff that the statements relating to the dogs were false.

Moreover, inasmuch as it appears undisputed

---

[2] We acknowledge that *The Random House Dictionary's* definition did not list hairdressing as an example. However, we are not persuaded that the dictionary's editors intended their examples to be exclusive. See also "blowtorch," *Webster's New World Dictionary, 2d College Edition,* (1976).

that plaintiff at least dyed the fur of the dogs, which would constitute hairdressing of dogs, we are not persuaded that the article, when read as a whole, becomes libelous because of an inaccurate reference to using the blowtorch on the dogs. This is particularly true since, by plaintiff's conduct, she asserts that blowtorching is a safe practice when performed on humans. Therefore, it would appear that, from plaintiff's perspective, blow-torching would also be safe on dogs, even if she did not engage in such a practice. Furthermore, her claim that she was libeled by labelling her as both a dog hairdresser and a human hairdresser is unsupported in light of the tinting of the dogs' hair. Since the undisputed factual showing indi-cates that plaintiff did blowtorch her human clien-tele and style her pooch's fur, we will not split hairs at this point to conclude that the statement that she used her blowtorch on dogs, even if inaccurate, is libelous.

For the above-stated reasons, we conclude that, when reviewing the article and accompanying pho-tographs as a whole, the article was not libelous.

On appeal, plaintiff also argues that the article invaded her privacy by casting her in a false light. The *Sawabini* Court, *supra* at 380-382, discussed the tort of placing a person in false light:

> False light invasion of privacy is described in *Ledl v Quik Pik Stores, supra,* as:
> " '[p]ublicity which places plaintiff in a false light in the public eye'. *Beaumont v Brown,* 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977). In discussing what was necessary to state a cause of action for invasion of privacy, this Court stated in *Reed v Pontin* [sic], 15 Mich App 423, 426; 166 NW2d 629 (1968):
> " 'When there has been no misappropriated use of, or physical intrusion into, the private life,

employment, property, name, likeness, or other personal place or interest, so that the privacy action is premised solely upon a disclosure of secret or confidential matter or upon being put *publicly* in a "false light", then if (without deciding) mere words of mouth can never be actionable (except by a slander action) the oral communication must be broadcast to the public in general or publicized to a large number of people.' " 133 Mich App 591-592.

\* \* \*

See Restatement Torts, 2d, § 652 E, comment a. Furthermore, comment b to § 652 E, p 395, explains that:

"The interest protected by this section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is. In many cases to which the rule stated here applies, the publicity given to the plaintiff is defamatory, so that he would have an action for libel or slander . . . . In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.

"It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation."

As indicated in the above discussion under the theory of defamation, with the exception of certain references to hairdressing dogs, none of the conduct attributed to plaintiff in the article was false.

Therefore, it could not place plaintiff in a false light. With reference to the assertions concerning her hairdressing of dogs, we do not believe that a rational trier of fact could conclude that, even if inaccurate, those references are unreasonable or put plaintiff in a position of receiving highly objectionable publicity. The article did not indicate that plaintiff harmed, injured or inflicted pain upon the dogs. Rather, at most, the article inaccurately stated that plaintiff used techniques on the dogs, such as blowtorching, which she also used on humans. While the article may have overstated the techniques that she uses on dogs, inasmuch as she advocates those techniques for use on humans, we cannot conclude that plaintiff would believe it highly objectionable that those techniques also be performed on dogs. Similarly, she cannot have been placed in false light as being both the hairdresser of dogs and humans inasmuch as the tinting of the canines' fur would constitute hairdressing. Thus, it would not be placing plaintiff in a false light to indicate that she served both dog and man. Accordingly, we believe that summary disposition was also properly granted on the false light claim.

In summary, although the manner in which the present article was written may have singed plaintiff's desire for obtaining favorable coverage of her unique hairdressing methods, we cannot subscribe to the view that it was libelous. We believe that the trial court aptly summarized this case when it stated that "this Court is of the Opinion that the Plaintiff sought publicity and got it." Indeed, it would appear that the root of plaintiff's dissatisfaction with defendants' article is that the publicity plaintiff received was not exactly the publicity she had in mind. While the publicity may have been

inflammatory from plaintiff's vantage point, we do not believe it was libelous. At most, defendants treated the article more lightheartedly than plaintiff either anticipated or hoped. While this may give plaintiff cause to cancel her subscription to the Detroit News, it does not give her cause to complain in court.

Affirmed. Costs to defendants.