ST PAUL FIRE & MARINE INSURANCE COMPANY v QUINTANA

Docket No. 96765. Submitted December 2, 1987, at Detroit. Decided
   January 19, 1988. Leave to appeal applied for.

   St. Paul Fire & Marine Insurance Company, which had provided
   professional liability insurance coverage to employees of the
   Epilepsy Center of Michigan, brought an action in Oakland
   Circuit Court against Angelo Quintana, Jr., an electroencepha-
   lograph (EEG) technician employed by the Epilepsy Center, and
   Mary Dezeeuw, by and through her legal guardian, Richard
   Dezeeuw. Plaintiff sought, inter alia, a declaration that it was
   under no duty to defend or indemnify Quintana in an action
   brought by Dezeeuw against Quintana and his employer, in
   which Dezeeuw sought damages for sexual assault committed
   by Quintana on Dezeeuw while she was at the Epilepsy Center
   for an EEG examination. The trial court, Steven N. Andrews, J.,
   granted summary disposition in favor of plaintiff, ruling that
   no material factual issues existed and plaintiff was entitled to
   judgment as a matter of law since the alleged assault was not a
   professional service to which coverage extended under the
   terms of plaintiff's policy. Dezeeuw appealed.

      The Court of Appeals held:

      The policy at issue provided coverage for liability arising out
   of the performance of professional services. With regard to
   Quintana, coverage could only obtain for the improper or
   incorrect administration of an EEG examination. The alleged
   sexual assault was not part of Dezeeuw's examination nor was
   it done under the guise of an examination. The trial court
   therefore properly ruled in favor of plaintiff.

      Affirmed.

REFERENCES

Am Jur 2d, Insurance §§ 260, 708, 709, 1409.

Consequences of liability insurer's refusal to assume defense of
   action against insured upon ground that claim upon which action
   is based is not within coverage of policy. 49 ALR2d 694.

Coverage and exclusions of liability or indemnity policy on physi-
   cians, surgeons, and other healers. 33 ALR4th 14.

Construction and application of provision of liability insurance
   policy expressly excluding injuries intended or expected by in-
   sureds. 31 ALR4th 957.

INSURANCE — PROFESSIONAL LIABILITY — SEXUAL ASSAULT.
> A professional liability insurer is under no duty to defend or indemnify an insured in an action brought against the insured by a plaintiff seeking damages for sexual assault where the assault was neither part of professional services rendered nor done under the guise of performing professional services.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Salwa G. Spong*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *David M. Nicholas*), for defendant Dezeeuw.

Before: J. B. SULLIVAN, P.J., and CYNAR and R. J. TAYLOR,* JJ.

CYNAR, J. Defendant, Mary Dezeeuw, appeals as of right from an October 29, 1986, order of summary disposition in favor of plaintiff, St. Paul Fire & Marine Insurance Company. We affirm.

On February 22, 1983, Mary Dezeeuw went to the Epilepsy Center of Michigan located in Detroit for the purpose of having an electroencephalograph (EEG) examination. Defendant Angelo Quintana, Jr., was employed by the Epilepsy Center as an EEG technician. Quintana performed the EEG examination and also sexually assaulted Dezeeuw. Quintana later pled guilty to third-degree criminal sexual conduct charges.

Subsequently, Dezeeuw filed a civil complaint in Wayne Circuit Court against Quintana, the Epilepsy Center and Dr. Jahsuz Lesinski. As to Quintana, the underlying action alleged sexual assault and battery was committed by Quintana against Dezeeuw. Plaintiff insurance company undertook to defend Quintana in the underlying action under a full reservation of rights.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Thereafter, on October 31, 1985, plaintiff filed a complaint for declaratory relief in Oakland Circuit Court seeking a determination that it had no duty to defend or indemnify Quintana in the underlying action filed in Wayne Circuit Court and an order requiring Quintana to reimburse plaintiff for all costs incurred in defending the underlying action.

On July 29, 1986, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10). At the hearing on the motion, plaintiff argued that it had no duty to defend or indemnify Quintana for the sexual assault of Dezeeuw under the professional liability policy, the general liability policy or the general "umbrella" excess policy issued to the Epilepsy Center. Following oral arguments, the court took the motion under advisement and indicated that it would issue a written opinion.

The court's written opinion was issued on October 7, 1986. In it the court ruled that plaintiff had no duty to defend or indemnify Quintana in the underlying action because the sexual assault did not constitute a "professional service" and, thus, was not covered under the professional liability coverage of the policy. In addition, the court also ruled that, under the general liability coverage of the policy, Dezeeuw's sexual assault claim was not covered since it was not an "occurrence," defined by the policy as "an accident which results in bodily injury neither expected nor intended from the standpoint of the insured." This latter ruling is not being appealed by Dezeeuw.

On October 29, 1986, the trial court issued an order of summary disposition in favor of plaintiff insurance company. From this order, defendant appeals. Plaintiff moved in this Court to affirm the summary disposition order. Plaintiff's motion was denied on July 22, 1987.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Morganroth v Whitall,* 161 Mich App 785, 788; 411 NW2d 859 (1987). In ruling on this motion, the trial court must consider not only the pleadings, but also depositions, affidavits, admissions and other documentary evidence, MCR 2.116(G)(5), and must give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). Summary disposition is proper under this subrule only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency that cannot be overcome. *Morganroth, supra.*

At issue in this case is whether the sexual assault by Quintana is covered under the professional liability policy. The comprehensive policy provides coverage for the following:

> Damages arising out of the performance of professional services rendered or which should have been rendered, during the policy period, by the insured or by any person for whose acts or omissions the insured is legally responsible . . . .

The first endorsement states:

> It is understood and agreed that the Professional Liability Insurance Coverage Form is applicable *only* to professional employees of the named insured while acting in their capacity as employees of the Epilepsy Center of Michigan. It is further agreed that coverage is not provided for any medical doctors.

The second endorsement provides:

> It is understood and agreed that the Board of

Directors and employees other than medical doctors are included as additional insured but only as respects their liability *in connection with professional services rendered or which [should] have been rendered.* [Emphasis added.]

The dispute on appeal centers on whether the sexual assault and battery falls within the purview of being a "professional service." We conclude that it does not. The term "professional services" is defined by the policy to mean

injury, sickness, disease, death or destruction due to the rendering of or failure to render any professional service and shall be deemed to include the dispensing of drugs or medicine and the service by the insured as a member of a formal accreditation or similar board or committee of a hospital or professional society.

No Michigan case has construed this term. However, other jurisdictions have done so in cases factually similar to this one. In *Hirst v St Paul Fire & Marine Ins Co,* 106 Idaho 792, 796; 683 P2d 440 (1984), the court stated:

The scope of "professional services" does not include all forms of a doctor's conduct simply because he is a doctor. As noted by the Supreme Court of Nebraska: . . . something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. [quoting *Marx v Hartford Accident & Indemnity Co,* 183 Neb 12; 157 NW2d 870 (1968).]

The *Hirst* court held that a physician's sexual assault of a patient did not constitute "professional services" under the insurance policy. *Id.*

Similarly, in *Smith v St Paul Fire & Marine Ins Co*, 353 NW2d 130 (Minn, 1984), the Supreme Court of Minnesota examined the language of the policy and concluded that the term "professional services" clearly referred to medical treatment of a physical ailment by a doctor and did not include sexual assaults by the physician upon his patients. In reaching this holding, the court stated:

> In a professional liability policy issued to a medical doctor, the term "professional services" plainly refers to medical treatment of physical ailments by the doctor. "[D]amages resulting from . . . providing . . . of professional services" contemplates improper or incorrect medical treatment of a physical ailment by the insured doctor. "[D]amages resulting from . . . withholding of professional services" contemplates failure on the part of the insured doctor to discover or treat an ailment that should have been discovered or treated. [*Id.*, 132.]

In our case, we concur with the trial court's finding that "damages arising out of the performance of professional services contemplates, in this case, improper or incorrect administration of the EEG." It does not include the sexual assault committed by Quintana. Although we feel that Quintana's act was flagrant, it was not part of the EEG examination or even done under the guise of the examination.

Defendant's reference to *Vigilant Ins Co v Kambly*, 114 Mich App 683; 319 NW2d 382 (1982), does not change our conclusion. That case held that an insurer would be liable for the malpractice of its insured physician who allegedly induced a patient to engage in sexual relations with him as part of her prescribed therapy. The policy at issue covered injuries arising out of the rendition of or the

failure to render professional services. The *Vigilant* Court did not define or interpret the term "professional services." Instead, the Court was called upon to determine whether it was sound public policy to afford liability insurance coverage to physicians who engaged in felonious sexual activity with their patients under the guise of treatment. *Id.,* 686.

Defendant relies heavily on *Vigilant* even though her complaint did not allege malpractice against Quintana. Instead, she alleged sexual assault and battery. There was no allegation that Quintana used the EEG examination as a pretext for obtaining sex from Dezeeuw. The EEG examination merely afforded Quintana an environment in which he could engage in a self-serving act. Therefore, the sexual assault committed by Quintana did not constitute "professional services rendered or which should have been rendered" as required under the instant policy.

As to defendant's argument that we should look beyond the wording of her complaint, this is only relevant to whether plaintiff has a duty to *defend* Quintana in the underlying lawsuit. This is separate and distinct from the issue of plaintiff's liability for Quintana's acts. See *VanHollenbeck v Ins Co of North America,* 157 Mich App 470; 403 NW2d 166 (1987). Moreover, the issue of plaintiff's duty to defend is not before us. Accordingly, the division of the trial court is affirmed.

Affirmed.