**Harry McGHEE, Plaintiff–Appellee,**

v.

**SANILAC COUNTY and Sanilac County Sheriff Department, together with John or Jane Doe, an unknown county employee, individually and in their official capacity, together with the Times–Herald Company, a Gannett Corporation, Jointly and Severally, Defendants,**

**Philip Lomason, Defendant–Appellant.**

**No. 90–1688.**

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1991.

Decided May 23, 1991.

Gary A. Benjamin (argued), Schrauger & Dunn, Detroit, Mich., for plaintiff-appellee.

Robert A. Lusk, Terrence J. Miglio (argued), Keller, Thoma, Schwarze, Schwarze,

Dubay & Katz, Detroit, Mich., for defendant-appellant.

Before KENNEDY and JONES, Circuit Judges; and FORESTER, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Philip Lomason appeals the district court's denial of his post-judgment motion for Rule 11 sanctions in this defamation action. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

Harry McGhee is a former deputy sheriff of Sanilac County, Michigan. In 1984, while working as a deputy sheriff, McGhee was accused of sexually assaulting a female prisoner. The assault was alleged to have occurred during the summer of 1983. Although he strongly contested the allegation, McGhee resigned his position as deputy sheriff to avoid publicity which would hurt his family. Facing the possibility of a lawsuit from the prisoner, the County settled with the alleged victim for $500.00. Thus, the allegation of sexual assault was put to rest.

During June and July of 1987, the Times–Herald published several stories concerning the 1984 allegation of sexual assault against McGhee. The story re-surfaced surrounding an investigation by the Michigan Attorney General's Office concerning the way the allegation was settled. The Times–Herald articles concerning the sexual allegation against McGhee and the resulting settlement, reported that the female prisoner *alleged* sexual assault, that McGhee *denied* the accusation, and that McGhee resigned thereafter.

On June 27, 1988, McGhee filed suit against Sanilac County, the Sanilac County Sheriff's Department, the Times–Herald and Philip Lomason. The complaint al-

leged that the articles published concerning him by the Times–Herald were defamatory. McGhee claimed that the Times–Herald had obtained the information about the allegation and his resignation from Philip Lomason. McGhee asserted that an employee of Sanilac County allowed Lomason to review McGhee's personnel file and to remove documents from that file. McGhee sought recovery under the tort theories of invasion of privacy by false light and defamation.

Upon reviewing McGhee's complaint, Lomason's attorney wrote a letter, dated August 4, 1988, to McGhee's attorney demanding that he withdraw the complaint because its allegations were untrue and because the defamation claim was barred by the applicable one-year statute of limitations. McGhee did not dismiss the complaint. In addition, on August 8, 1988, Lomason filed a motion to dismiss and for summary judgment because the complaint was barred by the statute of limitations and because the summons was not in conformity with Rule 4(b) of the Federal Rules of Civil Procedure. Apparently, no action was taken by the court on this motion.

Lomason's responses to McGhee's interrogatories revealed that: (1) Lomason did not know whether Sanilac County maintained a personnel file on McGhee; (2) if such a file was kept, Lomason had not seen it; and (3) Lomason had not given the Times–Herald any documents from such a personnel file. Lomason's responses indicate that he had no "direct" involvement in transferring information concerning McGhee from Sanilac County to the Times–Herald. The Times–Herald indicated in its answers to McGhee's interrogatories that

> The Times Herald did not see any personnel file of Mr. McGhee. The Times Herald was provided copies of materials involving Mr. McGhee by Diane Lomason.... We do not know whether Mr. Lomason or his "agents", if any, ever had in their possession any part of a personnel file for Mr. McGhee. We do not know how Mrs. Lomason came into

* The Honorable Karl S. Forester, District Judge for the United States District Court for the East- ern District of Kentucky, sitting by designation.

possession of the materials she provided to the Times Herald.

Diane Lomason is appellant's wife and legal secretary. After Lomason and the Times–Herald had responded to McGhee's interrogatories, Lomason's attorney again requested McGhee to dismiss Lomason from the suit. In this letter, dated November 21, 1988, Lomason's attorney warned that failure to dismiss his client would lead him to "seriously consider" pursuing Rule 11 sanctions. Nonetheless, McGhee failed to dismiss Lomason.

On November 30, 1988, during his deposition, McGhee admitted that the Times–Herald articles were true. On April 24, 1989, Lomason again moved for summary judgment and sought Rule 11 sanctions. Lomason's second summary judgment motion was grounded on the fact that McGhee had admitted that the allegedly defamatory statements in the Times–Herald articles were true. This motion stated that "Plaintiff's attorney refused to concur in the relief sought herein on April 17, 1989."

In an oral opinion on May 26, 1989, the district judge dismissed Lomason from the suit because the defamation and false light claims were meritless given plaintiff's deposition testimony and because the defamation claim was time-barred. McGhee voluntarily dismissed the appeal on October 6, 1989. On May 10, 1990, the district court denied Lomason's request for Rule 11 sanctions. This appeal followed.

The issues raised on appeal are: (1) whether the district court erred in denying appellant's request for Rule 11 sanctions; and (2) if the district court erred in not awarding sanctions, whether this court should now grant appellant attorneys' fees and costs.

## II.

■ We first note that in reviewing the district court's finding that there was not a Rule 11 violation, we apply the abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

Rule 11 of the Federal Rules of Civil Procedure provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell*, 110 S.Ct. at 2454 (citation omitted). "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus ... streamline the administration and procedure of the federal courts." *Id.* The Supreme Court has cautioned, however, that Rule 11 be "read in light of the concerns that it will spawn satellite litigation and chill vigorous advocacy." *Id. See also* Fed.R.Civ.P. 11 (Rule 11 advisory committee's notes) ("The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.").

"[I]n this circuit, the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.), *cert. denied sub nom. Sloan v. G & G Mfg., Inc.*, — U.S. ——, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). In determining whether a violation of Rule 11 has occurred, the district court is not to use the benefit of hindsight but " 'should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.' " *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.) (quoting Rule 11 advisory committee's note), *cert. denied sub nom. Garret v. INVST Financial Group, Inc.*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).

The district court found the pleadings "wanting in some respects," but nevertheless failed to find a Rule 11 violation. The pleadings satisfied the court because "the core of the complaint concerned the plaintiff's belief that the defendant in some manner contributed to the publication of less than flattering articles concerning the plaintiff in a local newspaper." Such a belief, however, is not sufficient to state a claim for either defamation or false light.

In a case such as this one, to prevail on a claim of defamation under Michigan law plaintiff must be able to show that the defamatory statements are false or that the defendant exhibited a reckless disregard for the truth. *See, e.g., Rouch v. Enquirer & News of Battle Creek*, 427 Mich. 157, 398 N.W.2d 245 (1986). Therefore, a reasonable attorney would have investigated to see if the allegedly defamatory statements were true before filing the complaint against Lomason. A reasonable investigation in this case would no doubt have revealed that the statements of which McGhee complained were true statements. This is especially so because McGhee's counsel could have learned from McGhee himself that the statements were true prior to the filing of the complaint. *See Hilton Hotels Corp. v.*

*Banov*, 899 F.2d 40, 43 (D.C.Cir.1990) (affirming Rule 11 sanctions in defamation case because relevant information was not largely in the control of defendant). A preliminary investigation would not have been unduly burdensome—just a few simple questions before filing the complaint. This is evidenced by the fact that McGhee easily admitted during deposition that the articles were true, and true word for word and line upon line. Moreover, a close reading of the articles would have alerted a reasonable attorney to the fact that the articles were not defamatory. The articles stated that McGhee was "accused," and he was accused. Also, the articles stated that McGhee "denied" the accusations, and he did deny them. These articles clearly did not give rise to a defamation claim.

This is not a case where additional discovery was necessary to enlighten plaintiff's attorney to the fact that no claim existed. All plaintiff's attorney needed to do was read the Times–Herald articles, question his client concerning the articles, and do a little research on the law of defamation. Although further discovery may have linked Lomason to the initial leak of the information to the Times–Herald, the fact remains that the information was true. Nor is this a case in which the attorney has articulated with support some exceptional reason(s) for failing to research the legal issues before filing the complaint. Rule 11 mandates that an attorney conduct a "reasonable inquiry" before signing a pleading. The record reveals that this was not properly done in the case before us. Therefore, we conclude that the defamation claim was not well-grounded in fact or law and that the conduct of counsel for McGhee was not reasonable under the circumstances. *See Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C.Cir.1990) (affirming grant of Rule 11 sanctions in defamation case for attorney's failure to conduct a reasonable pre-filing inquiry; attorney made no attempt independently to corroborate plaintiff's claims of defamation).

Lomason also contends that Rule 11 sanctions were appropriate because McGhee's suit was time-barred when filed

and because McGhee failed to dismiss Lomason even after the statute of limitations argument was raised. In its order denying Rule 11 sanctions, the lower court made no mention of Lomason's statute of limitations argument. As noted earlier, the district court did in fact dismiss McGhee's defamation claim in part because it was time-barred. On review, however, we do not think that the district court abused its discretion in failing to grant Rule 11 sanctions on grounds that the complaint was time-barred.

Given our finding that McGhee's defamation claim was not well-grounded in fact or law, it follows that the district court abused its discretion in not imposing sanctions for the filing of this claim. *See INVST Financial Group, Inc. v. Chem-Nuclear Systems*, 815 F.2d at 401 ("Rule 11 ... mandates the imposition of sanctions if the underlying conduct is found to violate the Rule.").

█ Next, we turn to the invasion of privacy by false light claim. In order to state a false light claim under Michigan law, the statements complained of must be: (1) unreasonable and highly objectionable publicity attributing to the plaintiff characteristics, conduct or beliefs that are false and place him in a false position; and (2) presented to the public. *Morganroth v. Whitall*, 161 Mich.App. 785, 792–794, 411 N.W.2d 859, 863–64 (1987); *Sawabini v. Desenberg*, 143 Mich.App. 373, 380–82, 381 n. 3, 372 N.W.2d 559, 564 n. 3 (1985). Generally, truth undermines such a claim. Restatement (Second) of Torts § 652E comment a (1977) ("[I]t is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true") (cited by both *Morganroth* and *Sawabini*). To avoid Rule 11 sanctions with respect to the false light claim, McGhee relies upon *Morganroth v. Whitall, supra.*

█ The district court concluded that under Michigan law truth is a defense to a false light claim. The court, however, stated that McGhee's counsel had relied upon *Morganroth* for the proposition that "the Michigan Court of Appeals had split on the question of whether truth is a defense to a

false light claim[.]" Thus, the court concluded that "[a]lthough a close reading of *Morganroth* fails to support this proposition, had plaintiff been correct there may have existed a basis for denying the defendant's summary judgment motion." Thus, the court refused to grant Rule 11 sanctions on the false light claim. The above reasoning by the district court is too generous. The inquiry is not what would have happened if the argument had been accepted; but rather, whether the legal argument was "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

The district court found that a close reading of *Morganróth* would notify an attorney that truth of the publication defeats a false light claim. However, Michigan case law on false light claims is not so clear as to make the filing of a false light claim against Lomason, under the circumstances of this case, sanctionable. The Times–Herald articles could have been perceived by McGhee and his attorney as highly objectionable and as attributing to McGhee certain false characteristics or conduct. Further, Michigan courts have repeatedly stated that a plaintiff need not be defamed to maintain a false light claim. *See, e.g., Morganroth*, 161 Mich.App. at 793, 411 N.W.2d at 863–64. Therefore, we conclude that the district court did not abuse its discretion in finding no Rule 11 violation on the false light claim.

### III.

Appellant Lomason contends that if this court finds that appellee violated Rule 11, this court should award Lomason attorney's fees and costs. We disagree.

We have found that appellee violated Rule 11 with respect to the defamation claim. The district court, however, is in a better position to address the appropriate type of sanction for this violation. Thus, we remand this case to the district court for the imposition of an appropriate Rule 11 sanction consistent with this opinion.

## IV.

For the foregoing reasons, we AFFIRM the district court's refusal to grant Rule 11 sanctions on the false light claim but REVERSE the district court's failure to grant Rule 11 sanctions on the defamation claim. We REMAND this case for further proceedings consistent with this opinion.