PRYSAK v R L POLK COMPANY

Docket No. 119770. Submitted May 7, 1991, at Detroit. Decided
February 3, 1992, at 9:35 A.M.

Daniel T. Prysak brought an action in the Wayne Circuit Court
against the R. L. Polk Company, alleging breach of an employ-
ment contract and wrongful discharge, and Crestwood Dodge,
Inc., alleging tortious interference with a contractual relation-
ship and libel. Polk terminated the plaintiff's employment after
Crestwood informed it that the plaintiff had allegedly threat-
ened to use information available to him through his employ-
ment to contact Chrysler Corporation customers to complain
about his car and the service he had received from Crestwood
unless Crestwood dropped a small claims matter it had brought
against him. The court, Thomas J. Foley, J., granted the
defendants' motions for summary disposition. The plaintiff
appealed.

The Court of Appeals *held:*

1. Summary disposition of the claims against Polk was prop-
erly granted because no genuine issue of material fact existed
regarding the existence of a contract providing for termination
only for just cause. The plaintiff did not receive a clear and
unequivocal promise of job security from Polk or receive an
employee policy manual or information about the contents of
the manual. The plaintiff therefore cannot claim an express
agreement or legitimate expectation that he would be termi-
nated only for just cause.

2. Because Polk, a private employer, is not bound by the
constitutional provisions guaranteeing freedom of speech, the
alleged termination of the plaintiff's employment for exercising
his constitutional right to free speech is not actionable under
the public policy exception to employment at will .

3. The granting of summary disposition before Polk answered
interrogatories designed to provide the plaintiff with informa-

REFERENCES

Am Jur 2d, Interference §§ 45, 47; Libel and Slander §§ 195-200,
484; Master and Servant §§ 20, 27, 48.7.

Modern status of rule that employer may discharge at-will em-
ployee for any reason. 12 ALR4th 544.

tion regarding Polk's policies or criteria regarding hiring and termination practices was not premature. The plaintiff admitted that he had no knowledge of the policies or criteria and, therefore, could not claim reliance thereon, and further discovery would not have provided a fair chance of uncovering factual support for the existence of a contract providing for termination only for just cause.

4. Summary disposition of the claim of tortious interference with a contractual relationship against Crestwood was proper. Crestwood's action was not wrongful conduct per se or lawful conduct that was done with malice, and there is no evidence that Crestwood intended to interfere with plaintiff's contractual relationship with Polk.

5. The trial court correctly determined that a letter Crestwood sent to Polk was subject to a qualified privilege. Because the plaintiff does not allege that the letter was written with actual malice, he did not overcome the privilege. Summary disposition of the libel claim against Crestwood was proper.

Affirmed.

MICHAEL J. KELLY, J., dissenting in part, stated that summary disposition for Crestwood was improper because a question of fact existed whether the plaintiff threatened to use Polk's lists to communicate his grievance to Crestwood's customers.

1. MASTER AND SERVANT — EMPLOYMENT AT WILL — TERMINATION OF EMPLOYMENT — TERMINATION FOR CAUSE.

A contract for permanent employment is for an indefinite period of time and is presumed to provide employment at will; a contract providing for termination for only just cause may be created by an express agreement or as a result of an employee's legitimate expectations grounded in the policy statements of the employer.

2. MASTER AND SERVANT — EMPLOYMENT AT WILL — ORAL CONTRACTS.

Oral statements of job security must be clear and unequivocal in order to overcome the presumption of employment at will.

3. MASTER AND SERVANT — EMPLOYMENT AT WILL — PUBLIC POLICY EXCEPTION — FREE SPEECH — PRIVATE EMPLOYERS.

Although employment at will generally may be terminated at any time and for any reason, an exception exists where the grounds for termination are so contrary to public policy as to be actionable; the public policy exception does not apply where an employee at will of a private employer is terminated for

exercising the constitutional right to free speech because the private employer is not bound by the constitutional provisions guaranteeing freedom of speech (US Const, Am I; Const 1963, art 1, § 3).

4. MOTIONS AND ORDERS — SUMMARY DISPOSITION.

Summary disposition generally is premature if it is granted before discovery on a disputed issue is complete; it may be appropriate, however, if further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion.

5. TORTS — INTERFERENCE WITH CONTRACTUAL RELATIONSHIP.

A plaintiff may maintain an action for tortious interference with a contract for employment at will.

6. TORTS — INTERFERENCE WITH CONTRACTUAL RELATIONSHIP — WRONGFUL ACTS PER SE.

A plaintiff who alleges tortious interference with a contractual or business relationship, in order to withstand a motion for summary disposition, must allege the intentional doing of an act that is wrongful per se or the doing of a lawful act with malice and unjustified in law for the purpose of invading the plaintiff's contractual rights or business relationship; an act that is wrongful per se is an act that is inherently wrongful or an act that can never be justified under any circumstances.

7. LIBEL AND SLANDER — PRIVILEGE — QUESTIONS OF LAW.

The initial determination whether a privilege exists is one of law for the court.

8. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — MALICE.

The essential elements of a qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only; a plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice.

*Poplar & Kalis, P.C.* (by *John Poplar* and *Anrico D. Pinto*), for the plaintiff.

*Clark, Klein & Beaumont* (by *Fred W. Batten* and *Nancy J. Gordon*), for R.L. Polk Company.

*Abbott, Nicholson, Quilter, Esshaki & Young-*

*blood, P.C.* (by *Carl F. Jarboe*), for Crestwood
Dodge, Inc.

Before: REILLY, P.J., and GILLIS and MICHAEL J.
KELLY, JJ.

REILLY, P.J. Plaintiff appeals as of right from
circuit court orders granting defendants' motions
for summary disposition pursuant to MCR 2.116(C)
(10). We affirm.

Plaintiff was employed as a computer operator
by defendant R. L. Polk Company (Polk), a publish-
ing and market research company, from November
1985 to March 1988. Plaintiff was discharged from
his job in March 1988 for allegedly threatening a
customer, defendant Crestwood Dodge.

Before his termination, plaintiff had experienced
problems with his car and took it to Crestwood for
repair. A dispute arose between plaintiff and
Crestwood regarding the amount owed for use of a
replacement car. Crestwood brought a small
claims action to recover this amount. Plaintiff
participated in mediation of the action with two
representatives of Crestwood.

During the course of the mediation, the media-
tor left the room so that the parties could resolve
the matter between themselves. What happened
when the mediator left is disputed by the parties.
Plaintiff asserts that he told the Crestwood repre-
sentatives that he would take a day off from work
and stand out in front of the dealership to pass out
letters indicating that his Dodge Shadow was a
"lemon." The Crestwood representatives asserted
that plaintiff stated that he worked for Polk and
that if the small claims matter was not dropped he
would send letters stating that his car was a
"lemon" to all of Chrysler's customers. The repre-
sentatives believed that the mailing was to be

accomplished by using information available to plaintiff through his employment at Polk.

Crestwood sent a letter informing Polk of plaintiff's alleged threat. In the letter, Crestwood expressed concern regarding the improper use of its customer lists and requested assurance from Polk that "Mr. Prysak's stated plan does not come to fruition." On the day his employment was terminated, plaintiff was called into the personnel office and was shown the letter. Plaintiff was informed that he was being discharged for threatening a customer.

In his complaint, plaintiff alleged that he was employed pursuant to a contract providing for termination for just cause only that was breached by Polk when his employment was terminated. Plaintiff also claimed that his termination was against public policy and constituted an intentional infliction of emotional distress. Additionally, it was alleged that Crestwood had intentionally interfered with the contractual relationship between plaintiff and Polk and that Crestwood's letter to Polk contained libelous statements regarding plaintiff.

Both Polk and Crestwood brought motions for summary disposition pursuant to MCR 2.116(C)(10). The circuit court granted both motions.

On appeal, plaintiff asserts that the trial court improperly granted defendants' motions for summary disposition. A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A party opposing a motion brought under C(10) may not

rest upon the mere allegations or denials in the pleadings, but must by affidavit, deposition, admission, or other documentary evidence set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). *Panich v Iron Wood Products Corp*, 179 Mich App 136, 139; 445 NW2d 795 (1989). This Court is liberal in finding a genuine issue of material fact. *St Paul Fire & Marine Ins Co, v Quintana*, 165 Mich App 719, 722; 419 NW2d 60 (1988). Nonetheless, where the opposing party fails to come forward with evidence, beyond the allegations or denials in the pleadings, to establish the existence of a material factual dispute, the motion is properly granted. *SSC Associates v General Retirement System of the City of Detroit*, 192 Mich App 360; 480 NW2d 275 (1991); *Morganroth v Whitall*, 161 Mich App 785, 788; 411 NW2d 859 (1987); MCR 2.116(G)(4).

I

Plaintiff first claims that summary disposition was improper in regard to his claims of breach of an employment contract and wrongful discharge because there was a genuine issue of material fact whether plaintiff was employed pursuant to a contract providing for termination for just cause only. Plaintiff asserts that his claim of a just-cause contract is supported by the employee handbook issued by Polk and statements made to him by a supervisor at Polk.·

Generally, a contract for permanent employment is for an indefinite period of time and is presumed to provide for employment at will. *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 596; 292 NW2d 880 (1980). However, a contract providing for termination for just cause only may be created by an express agreement or

as a result of an employee's legitimate expectations grounded in the policy statements of the employer. *Id.* at 598.

An employee's legitimate expectations may be based on the employer's written policy statements set forth in an employee manual or handbook. *Id.* at 599. While plaintiff argues that the existence of Polk's employee manual creates an issue of fact regarding the existence of a just-cause contract, he admits in his brief on appeal and in his deposition testimony that he does not recall ever receiving an employee policy manual. Nor does he claim that he was told of its contents. Therefore, we fail to see how plaintiff can assert that his interpretation or understanding of the manual or handbook gave rise to an expectation either subjective or objective, that he would be terminated only for just cause. Compare *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 465; 436 NW2d 389 (1988). Accordingly, we reject plaintiff's argument that statements made in Polk's employee manual or handbook create an issue of fact regarding the existence of a just-cause contract.

Plaintiff also asserts that oral representations made to him by an agent of Polk create a genuine issue of material fact in regard to the existence of a just-cause contract. In his deposition, plaintiff stated that he had a discussion with a manager at Polk regarding another employee who was not "working out." Plaintiff testified that the manager told him "you just can't go firing people for no reason . . . you got [sic] to have a reason."

In order to overcome the presumption of employment at will, oral statements of job security must be "clear and unequivocal." *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 644; 473 NW2d 268 (1991). The Court in *Rowe* determined that oral statements made to the plaintiff at her initial

interview that as long as she sold, she would have a job at Montgomery Ward did not clearly indicate an intent to form a contract to terminate only for cause. *Id.* at 645.

It was noted by the Court that the statements made to Mrs. Rowe were similar to the statement considered in *Toussaint, supra.* However, the Court found lacking objective evidence that would permit a reasonable juror to find that a reasonable promisee would interpret the statements as a promise of termination for cause only. *Rowe, supra* at 643. In making this determination, the Court noted that the statement was not made in response to any inquiry by the plaintiff regarding job security or during the course of negotiating the terms of employment.

The statement relied on by plaintiff in this case is not a "clear and unequivocal" promise of job security. Furthermore, the circumstances surrounding the statement do not provide objective evidence that a just-cause contract existed. The statement was not made in the context of negotiating plaintiff's terms of employment or in response to inquiries regarding his job security. Rather, they were made during the course of a discussion regarding the job performance of another employee. Under these circumstances, a reasonable juror could not find that the statements made to plaintiff could be reasonably interpreted as a promise of termination for cause only.

On the basis of the foregoing, we conclude that no issue of fact existed regarding the existence of a just-cause contract. Polk's motion for summary disposition of the claims of wrongful termination and breach of contract was properly granted.

II

Next, plaintiff argues that summary disposition

was improper because facts existed to support his
claim that the termination of his employment was
contrary to public policy. Specifically, plaintiff
claims that he was discharged for stating that he
was going to exercise his constitutional right to
free speech by standing in front of Crestwood
Dodge and expressing his dissatisfaction with
Crestwood's product and service.

Generally, at-will employment may be termi-
nated at any time, for any reason. *Suchodolski v
Michigan Consolidated Gas Co,* 412 Mich 692, 694-
695; 316 NW2d 710 (1982). However, there is an
exception to the general rule based on the princi-
ple that some grounds for termination are so
contrary to public policy as to be actionable. *Id.* at
695. These proscriptions have been found in ex-
plicit legislative statements that prohibit the dis-
charge, discipline, or other adverse treatment of
employees acting in accordance with a statutory
right or duty. *Id.* at 695. See, e.g., MCL 37.2701;
MSA 3.548(701) (Civil Rights Act), and MCL
15.362; MSA 17.428(2) (Whistleblowers' Protection
Act). Additionally, courts have implied a prohibi-
tion on retaliatory discharge where the reason for
the discharge was the employee's exercise of a
statutory right, *Sventko v Kroger Co,* 69 Mich App
644; 245 NW2d 151 (1976) (employee discharged in
retaliation for filing a workers' compensation
claim), or the employee's refusal to violate a law.
*Trombetta v Detroit, T & I·R Co,* 81 Mich App 489;
265 NW2d 385 (1978).

While this Court has recognized that it may be a
violation of the First Amendment for a county
employer to discipline or discharge an employee
for engaging in certain types of speech, *Pilarowski
v Brown,* 76 Mich App 666; 257 NW2d 211 (1977),
plaintiff has not cited, and we have not found, any

Michigan authority that addresses the issue whether an employee of a private employer who is terminated for exercising his constitutional right to free speech may maintain an action under the public policy exception to at-will employment. Both the United States and Michigan Constitutions guarantee the plaintiff's right to free speech. However, unlike the statutory provisions that have provided the basis for the public policy exception in the above-noted cases, the federal and the Michigan constitutional provisions guaranteeing free speech do not extend to private conduct, but have been limited to protection against state action. US Const, Am I; Const 1963, art 1, § 3; *Hudgens v NLRB,* 424 US 507, 513; 96 S Ct 1029; 47 L Ed 2d 196 (1976); *Woodland v Michigan Citizens Lobby,* 423 Mich 188, 212; 378 NW2d 337 (1985). Because Polk is a private employer, it is not bound by the constitutional provisions guaranteeing freedom of speech.[1] Accordingly, plaintiff has failed to state a claim upon which relief can be granted, MCR 2.116(C)(8), and summary disposition was properly granted with regard to the claim, albeit for the wrong reason. *Griffey v Prestige Stamping, Inc,* 189 Mich App 665, 669; 473 NW2d 790 (1991).

III

Plaintiff's next argument is that summary disposition was premature because it was granted be-

---

[1] We note that even if we were to find that a private employer's termination of an employee for exercising his right to free speech came within the public policy exception to at-will employment, we would find that, under the facts of this case, plaintiff's termination was not so contrary to public policy as to be actionable. Plaintiff's proposed speech did not involve a matter of public concern, but was regarding a private matter, plaintiff's complaints regarding his car. Any interference with plaintiff's right to comment on this matter by his employer is not so contrary to the public policy of this state as to be actionable. See *Pilarowski, supra* at 675, and *Schultz v Industrial Coils, Inc,* 125 Wis App 2d 520; 373 NW2d 74 (1985).

fore Polk answered interrogatories submitted by plaintiff. Plaintiff claims that the interrogatories were vital to discovery because they were designed to reveal Polk's past employment and termination policies and practices.

Generally, summary disposition granted before discovery on a disputed issue is complete is considered premature. *Kassab v Michigan Basic Property Ins Ass'n,* 185 Mich App 206, 216; 460 NW2d 300 (1990), lv gtd 439 Mich 864 (1991). However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion. *Id.*

In the present case, Polk's motion for summary disposition was not granted prematurely. The motion was granted after the discovery period had expired. See MCR 2.301(A). Although plaintiff told the court at the time the motion was granted that Polk had not answered the interrogatories, our review of the lower court record shows that there is no indication that plaintiff ever filed a motion to compel Polk to respond to the interrogatories before or after the expiration of the period for discovery.

Furthermore, summary disposition was appropriate because further discovery would not have provided a fair chance of uncovering factual support for plaintiff's claim. Plaintiff claims that the answers to interrogatories would have provided him with information regarding Polk's policies regarding hiring and termination practices. However, as was discussed previously, plaintiff's claim that he had a just-cause employment contract was based on the oral representations made by a superior and the statements of policy made in the employee handbook. However, as we concluded previously, because plaintiff did not remember

ever receiving the handbook and he does not claim
he was informed of the contents of the handbook,
he could not rely on any policy statements made
therein. Furthermore, plaintiff stated in his deposi-
tion that he did not know Polk's criteria for firing
someone or even if Polk had such criteria. As was
stated previously in regard to the employee hand-
book, plaintiff cannot claim that he relied on
policies or "criteria" of which he had no knowl-
edge. Accordingly, any further discovery regarding
Polk's hiring and termination policies would not
have provided further factual support for plain-
tiff's claim.

IV

Next, plaintiff argues that a genuine issue of
material fact exists in regard to his claim that
Crestwood tortiously interfered with his contrac-
tual relationship with Polk.

A plaintiff may maintain an action for tortious
interference with an at-will employment contract.
*Feaheny v Caldwell,* 175 Mich App 291, 304; 437
NW2d 358 (1989).

> [O]ne who alleges tortious interference with a
> contractual or business relationship must allege
> the intentional doing of a per se wrongful act or
> the doing of a lawful act with malice and unjusti-
> fied in law for the purpose of invading the contrac-
> tual rights or business relationship of another.
> [*Stanton v Dachille,* 186 Mich App 247, 255; 463
> NW2d 479 (1990), quoting *Feldman v Green,* 138
> Mich App 360, 378; 360 NW2d 881 (1984).]

See also *Formall, Inc v Community National
Bank of Pontiac,* 166 Mich App 772, 779; 421
NW2d 289 (1988). A wrongful act per se is an act
that is inherently wrongful or an act that can

never be justified under any circumstances. *Id.* at 780.

We note that this Court has held that defendants motivated by legitimate business reasons are protected from liability under this cause of action. *Id.; Christner v Anderson, Nietzke & Co, PC,* 156 Mich App 330, 348-349; 401 NW2d 641 (1986), modified on other grounds 433 Mich 1; 444 NW2d 779 (1989). However, in *Jim-Bob, Inc v Mehling,* 178 Mich App 71, 96-97; 443 NW2d 451 (1989), a panel of this Court declined to hold that a defendant who is motivated by legitimate business interests is therefore free from liability. The Court stated that motive is but one of several factors that must be weighed in determining the propriety of a defendant's actions. *Id.* The other factors include (1) the nature of the defendant's conduct, (2) the nature of the plaintiff's contractual interest, (3) the social utility of the respective interests of the plaintiff and the defendant, and (4) the proximity of the conduct of the defendant with the interference. *Id.* at 97. We need not resolve the conflict, if one exists, between *Christner* and *Jim-Bob* because we are able to analyze plaintiff's claim under the standard set out in *Stanton, Feldman, and Formall.*

In the present case, plaintiff alleged in his complaint that Crestwood intentionally caused his discharge from Polk through its letter to Polk. The letter expressed Crestwood's concern over the possible misuse of customer lists. The dealership sought assurances from Polk that plaintiff's plan would not "come to fruition" and stated that if it did not receive such assurances, it would turn the matter over to its legal department.

Plaintiff asserts on appeal that Crestwood's letter "unjustifiably" led to plaintiff's termination. However, plaintiff has not presented any facts to

suggest that Crestwood's action in sending the letter was wrongful conduct per se or was lawful conduct that was done with malice and that sending the letter was an unjustified act done for the purpose of invading his contractual relationship with Polk.

In light of the evidence presented, we hold that the trial court correctly determined that there was no genuine issue of material fact in regard to plaintiff's claim. The letter itself is merely an expression of Crestwood's concern over the alleged threats made by plaintiff. The letter, while employing strong language, does not call for the discharge of plaintiff. Rather, Crestwood sought assurances that its customer lists would not be misused. There is no indication that Crestwood was acting with a wrongful or malicious intent to interfere with plaintiff's employment. To the contrary, Crestwood appears to have been acting solely to protect the confidentiality of its customer lists.

V

Lastly, plaintiff argues that summary disposition was improper in regard to his libel claim. Plaintiff alleges that the statements made in Crestwood's letter were false and defamatory.

Libel has been defined as a "statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Stablein v Schuster,* 183 Mich App 477, 480; 455 NW2d 315 (1990).

In the present case, the trial court found that Crestwood's statements in the letter were protected under a qualified privilege. The determina-

tion whether a privilege exists is one of law for the court. *Id.* The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Bufalino v Maxon Bros, Inc,* 368 Mich 140, 153; 117 NW2d 150 (1962); *Smith v Fergan,* 181 Mich App 594, 596-597; 450 NW2d 3 (1989). A plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth. *Id.* at 597. General allegations of malice are insufficient to establish a genuine issue of material fact. *Gonyea v Motor Parts Federal Credit Union,* 192 Mich App 74; 480 NW2d 297 (1991); *Smith, supra* at 597.

The trial court correctly determined that the letter written by Crestwood Dodge was subject to a qualified privilege. The letter was written in response to perceived threats to the confidentiality of its customer lists and was limited in scope to addressing this concern. Plaintiff failed to overcome the qualified privilege because he has presented no evidence of, and does not even allege that the letter was written with actual malice. Accordingly, we conclude that summary disposition was proper with regard to this claim.

Affirmed.

GILLIS, J., concurred.

MICHAEL J. KELLY, J. *(concurring in part and dissenting in part).* Defendant Crestwood posits its claim that there was no genuine issue of material fact regarding plaintiff's claim of tortious interference with his contractual relationship with defendant Polk on its assertion that plaintiff threatened

to circulate letters to Crestwood's customers. Crestwood further asserts that its employees, Jeffrey E. Gedz and Deborah A. Yowtz, were told by plaintiff that he would make copies of all service work that Crestwood did on his car, attach a letter stating what a lemon it was, and "send it to all of Chrysler's customers. This was to be done to the best of our knowledge with information he had access to at R. L. Polk." Plaintiff denies this. In granting summary disposition, the trial court said:

> He threatened them. . . . He made the statements, no question about that.
>
> * * *
>
> His statements were such that any reasonable person would have to so react.

But I have a very real question about what statements plaintiff made. I do not see where he admits to having made statements that he would cull R. L. Polk lists to obtain names and addresses of customers of Crestwood Dodge or Chrysler Corporation and that he would use those mailings to communicate his lemon message.

Plaintiff testified in this regard during questioning by Crestwood's attorney as follows:

> Q. Now, it says on this piece of paper which is signed and dated by Jeffrey Gedz and Deborah A. Yowtz. I'd like to read it. "During the course of mediation on December 16, 1987 it was stated by Daniel Prysak while the mediator was out of the room that he worked for R. L. Polk and that if our small claims action was not dropped that he could make copies of all service work that had been done on his car and attach a letter stating, quote, 'what a lemon he had for a car,' and send it to all of Chrysler's customers. This was to be done to the best of our knowledge with information he had

access to at R. L. Polk." Now, did you make that
type of statement to these two individuals?

*A.* No, I did not.

* * *

*A.* I was really mad. I said here's all my bills,
here's, you know, a list of all my repairs and
everything, I says this is getting too expensive, I
says I'm going to copy off all these bills and, you
know, just write a little note if you're thinking
about buying a Shadow don't, you know, it is a
lemon. I said I'll take a day off work and I said I'll
stand out on your sidewalk and pass it out to
Crestwood's customers, and they're like I wouldn't
advise that but you can do what you want to.
Where they got this I have no idea.

*Q.* You told them you would stand out in front
of Crestwood Dodge?

*A.* Yeah. I said I'll stand out in front of Crest-
wood Dodge and pass it out to customers.

*Q.* Did you say anything about sending a letter
to customers?

*A.* I said I'll write a letter saying what a lemon I
had and staple to it all my bills and say here you
go, if you're thinking about buying a Dodge
Shadow don't.

*Q.* Did you say anything about sending it in the
mail?

*A.* Oh, no, no.

*Q.* You made no statements about sending the
letter to customers in the mail?

* * *

*A.* . . . No.

This is a classic question of fact. Certainly the
jury or trier of fact could infer that plaintiff
threatened to use R. L. Polk lists to communicate
his grievances to defendant's customers. The trial
court on motion for summary disposition could not
make that inference in the face of plaintiff's deni-
als. Crestwood's employees and agents could make

that inference, which they did, but it is an inference, not a fact.

I believe that the majority's disposition of issues IV and V is improper because they assumed that plaintiff admitted, or his counsel admitted for him, that he threatened improper use of R. L. Polk lists to communicate his grievances to customers of Crestwood Dodge. For that reason, I would reverse the grant of Crestwood's motion for summary disposition.

I concur in the majority's disposition regarding affirmation of summary disposition in favor of the employer, R. L. Polk Company.